IN RE ILIANA M.*
(AC 33719)
(AC 33721)

DiPentima, C. J., and Beach and Dupont, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 3—officially released March 9, 2012**

** March 9, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*John C. Drapp III*, with whom, on the brief, was *Joseph A. Jaumann*, for the appellant (respondent father in AC 33719).

*Rosemarie T. Weber*, for the appellant (respondent mother in AC 33721).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner in both cases).

*Opinion*

DiPENTIMA, C. J. The sole issue in these consolidated appeals is whether the trial court properly denied the joint motion to dismiss filed by the respondent father and the respondent mother. Specifically, the respondent father in AC 33719 and the respondent mother in AC 33721 argue that the trial court lacked jurisdiction over the minor child. We disagree and, accordingly, affirm the judgment of the trial court.

The following factual and procedural history is relevant to our resolution of these appeals. Previously, the respondent mother's parental rights had been terminated with respect to a child in 2008. In 2009, shortly after their birth, the respondent mother's twin girls were also committed to the care of the commissioner of the department of children and families (commissioner). On February 3, 2011, a social worker from the department of children and families (department), concerned about the respondent mother's health during her pregnancy, requested the Willimantic police department to perform a well-person check. The child, Iliana M., was

born on February 14, 2011, in Worcester, Massachusetts.

Massachusetts hospital workers alerted the Massachusetts department of children and families regarding concerns about the respondent mother. Upon investigation, agents from Massachusetts contacted their counterparts in the Connecticut department. The respondent mother ultimately informed the Massachusetts agents that "her lawyer [had] told her to come to Massachusetts so that Connecticut [would] not be legally able to remove the child from her custody." The court noted that "[w]hile the Massachusetts agency seemed ready to assist the Connecticut [department], [the agency] reported that [it was] unable to take custody for another state."[1]

Personnel from the department, acting on behalf of the commissioner, sought and obtained an ex parte order of temporary custody from the Superior Court on February 17, 2011. Thereafter, social workers from the department traveled to Massachusetts and, pursuant to the order of temporary custody, removed the child from the hospital and placed her in foster care in Connecticut. The respondents then filed a joint motion to dismiss the order of temporary custody.

On March 1, 2011, the court held a hearing and heard testimony on the jurisdictional issue raised in the motion to dismiss. On April 12, 2011, the court granted the motion to dismiss. It found that Connecticut, and not Massachusetts, was the home state and residence of the respondents and discredited their representations to Massachusetts authorities regarding their intention to live there. The court then referenced General

---

[1] The court stated in its memorandum of decision issued April 12, 2011, that "[i]t [was] unclear from the testimony whether the Massachusetts [department of children and families] initially declined to intervene or whether the Connecticut [department] preempted any Massachusetts action."

Statutes § 46b-121 (a) (1), which provides: "Juvenile matters in the civil session include all proceedings concerning uncared-for, neglected or dependent children and youths *within this state* . . . ." (Emphasis added.) The court reasoned that, because of the undisputed fact that the child was not, and never had been, within the state of Connecticut, the order of temporary custody was issued improperly. It then vacated the ex parte order of temporary custody and dismissed the neglect petition without prejudice.

On April 12, 2011, after receiving the court's decision, the commissioner invoked a ninety-six hour hold pursuant to General Statutes § 17a-101g. The commissioner then filed an application for a second order of temporary custody and neglect petition on April 13, 2011. The court entered an ex parte order of temporary custody on that same day. On April 19, 2011, the respondents again filed a motion to dismiss. The court conducted a second hearing on April 28, 2011, in which the parties stipulated that the findings made during the prior proceedings could be used for the purpose of determining the jurisdictional question. The court again found that Connecticut was the home state and residence of the respondents. Additionally, as the minor child had been in foster care in Connecticut since days after her birth, she was in this state when the respondents were served with process. It also determined, contrary to the arguments of the respondents that, because the child was in Connecticut, "the jurisdictional requirements of [§] 46b-121 (a) have been met." In addition, the court rejected the respondents' equity claim that the department had acted with "unclean hands." Specifically, the court reasoned that the respondents had not been truthful to the Massachusetts authorities and cited the principle that "[t]o seek equity, one must do equity . . . ." It concluded that the respondents' unclean hands proved

fatal to their equity claim. Accordingly, the court denied the respondents' second motion to dismiss.

On June 27, 2011, the court issued a memorandum of decision sustaining the order of temporary custody on the basis of the doctrine of predictive neglect.[2] It further found that commitment of the child was warranted and in her best interests, and, accordingly, the court committed the child to the custody of the commissioner. These consolidated appeals followed.

On appeal, the respondents argue that the court improperly denied their second motion to dismiss.[3] Specifically, they contend that the court lacked subject matter jurisdiction pursuant to General Statutes § 46b-115k. The respondent mother also argues that the court denied her right to due process to have an evidentiary hearing in Massachusetts.[4] The commissioner counters that the court properly determined the jurisdictional issue and denied the respondents' motion to dismiss. We agree with the commissioner.

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the [state] cannot as a matter of law and fact state a cause of action that should be heard by the court . . . . A motion to dismiss tests, inter alia, whether, on the face of the

---

[2] "See In re T.K., 105 Conn. App. 502, 513, 939 A.2d 9 ('[t]he doctrine of predictive neglect is grounded in the state's responsibility to avoid harm to the well-being of a child, not to repair it after a tragedy has occurred'), cert. denied, 286 Conn. 914, 945 A.2d 976 (2008); In re Michael D., 58 Conn. App. 119, 123, 752 A.2d 1135 ('[o]ur statutes clearly permit an adjudication of neglect based on a potential for harm or abuse to occur in the future'), cert. denied, 254 Conn. 911, 759 A.2d 505 (2000)." In re Joseph W., 301 Conn. 245, 249 n.1, 21 A.3d 723 (2011); see In re Ja-lyn R., 132 Conn. App. 314, 319, 31 A.3d 441 (2011).

[3] We note that the respondents have not challenged the court's ruling relating to the finding of neglect or the commitment of the child to the custody of the commissioner.

[4] The respondent mother also claims that the trial court, pursuant to General Statutes § 46b-115r, should have declined to exercise jurisdiction because the department engaged in unjustifiable conduct. This claim was not raised before the trial court, and, therefore, we decline to review it.

record, the court is without jurisdiction. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [decision to deny] . . . the motion to dismiss will be de novo." (Internal quotation marks omitted.) *In re Addie May Nesbitt*, 124 Conn. App. 400, 407–408, 5 A.3d 518, cert. denied, 299 Conn 917, 10 A.3d 1051 (2010); see generally *Keller* v. *Beckenstein*, 122 Conn. App. 438, 442–43, 998 A.2d 838, cert. granted on other grounds, 298 Conn. 921, 4 A.3d 1227, 5 A.3d 486 (2010).

We now set forth the legal principles regarding the jurisdiction of the trial court. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . We must determine whether the court had subject matter jurisdiction to entertain the plaintiff's complaint. We are mindful that [a] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . . [W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Temlock* v. *Temlock*, 95 Conn. App. 505, 518–19, 898 A.2d 209, cert. denied, 279 Conn. 910, 902 A.2d 1070 (2006); see *In re DeLeon J.*, 290 Conn. 371, 376–77, 963 A.2d 53 (2009).

In the motion to dismiss, the respondent mother argued that she filed a special appearance limited to the issue of whether the trial court had personal juris-

diction.[5] Specifically, the respondents argued that the court should have dismissed the matter for lack of personal jurisdiction. The trial court rejected this argument and concluded that, because the child was in this state at the time the commissioner moved for an order of temporary custody, the requirements of § 46b-121 (a) (1) had been met. The commissioner's brief asserts that the court's conclusions regarding personal jurisdiction and § 46b-121 (a) (1) were correct.[6] The focus of the respondents' appellate arguments is, however, on the issues of the subject matter jurisdiction and the applicability of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), General Statutes § 46b-115 et seq.[7] Our focus is, therefore, on the issue of whether the court had subject matter jurisdiction.

[5] Although the motion to dismiss expresses the arguments in terms of the respondent mother only, the motion was joined by the respondent father. Additionally, we note that the court, in its memorandum of decision, stated that the respondents filed the motion to dismiss.

[6] To the extent that the respondents argue that the conduct of the department was inequitable in bringing the child from Massachusetts to Connecticut, we agree with the trial court's statement and finding that "[t]he respondents have acted with unclean hands . . . . To seek equity, one must do equity, and they have not." This court has recognized: "Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Internal quotation marks omitted.) *Monetary Funding Group, Inc.* v. *Pluchino,* 87 Conn. App. 401, 407, 867 A.2d 841 (2005). The respondents have not demonstrated that the trial court abused its discretion with respect to the clean hands doctrine.

[7] We note that neither the department nor the commissioner appealed from the first decision of the court granting the motion to dismiss filed by the respondents. That ruling is, therefore, not before us.

At the outset, we note our agreement with the decisions of the Superior Court that have set forth the goals of the UCCJEA. "The purposes of the UCCJEA are to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; promote cooperation with the courts of other states; discourage continuing controversies over child custody; deter abductions; avoid re-litigation of custody decisions; and to facilitate the enforcement of custody decrees of other states. . . . The UCCJEA addresses inter-jurisdictional issues related to child custody and visitation." (Citation omitted; internal quotation marks omitted.) *Casman* v. *Casman*, Superior Court, judicial district of New Haven, Docket No. FA-03-0476028 (February 3, 2006); see *Lippman* v. *Perham-Lippman*, Superior Court, judicial district of Fairfield, Docket No. FA-06-4013911-S (March 10, 2006); see also *McNamara* v. *McNamara*, Superior Court, judicial district of Tolland, Docket No. FA-97-0064781-S (January 20, 2006).

The UCCJEA is the enabling legislation for the court's jurisdiction. See *In re DeLeon J.*, supra, 290 Conn. 377; *In re Leona A.D.*, Superior Court, judicial district of Hartford, Docket No. CP-10-013578-A (March 16, 2011); see also *Margulies* v. *Cassano*, 52 Conn. App. 116, 119–120, 725 A.2d 988 (addressing jurisdiction enabled by Uniform Child Custody Jurisdiction Act, predecessor to UCCJEA), cert. denied, 248 Conn. 914, 734 A.2d 564 (1999); *Muller* v. *Muller*, 43 Conn. App. 327, 331, 682 A.2d 1089 (1996) (same). "The UCCJEA, as adopted in chapter 815p of our General Statutes, provides Superior Courts with exclusive jurisdiction to make a child custody determination by initial or modification decree if: '(1) This state is the home state of the child on the date of the commencement of the child custody proceeding; (2) This state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside

in this state; (3) A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (4) A court of another state which is the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under a provision substantially similar to section 46b-115q or section 46b-115r, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (5) All courts having jurisdiction under subdivisions (1) to (4), inclusive, of this subsection have declined jurisdiction on the ground that a court of this state is the more appropriate forum to determine custody under a provision substantially similar to section 46b-115q or section 46b-115r; or (6) No court of any other state would have jurisdiction under subdivisions (1) to (5), inclusive, of this subsection. . . .' General Statutes § 46b-115k (a). 'Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.' General Statutes § 46b-115k (b). Furthermore, § 46b-115k (c) provides: 'Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.' " *Temlock* v. *Temlock*, supra, 95 Conn. App. 519–20.

The court conducted two hearings and made factual findings regarding the jurisdictional issue. See *Margulies* v. *Cassano*, supra, 52 Conn. App. 120 ("[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided

to present evidence and to cross-examine witnesses" [internal quotation marks omitted]). The court found that the respondent mother's residence had been in the vicinity of Willimantic for the past seven years. Both respondents listed a Willimantic address with the court, and recent police reports also had noted their addresses in Willimantic. Both respondents provided Connecticut addresses to the Massachusetts hospital. Finally, the court found that the respondents' representations to the Massachusetts authorities were not truthful with regards to their intentions to live in Massachusetts. In conclusion, the court specifically found that "at the time of the institution of these proceedings, [the respondents] were residents of Willimantic CT."

The court also made key findings with respect to the home state of the child. First, it found that Massachusetts was not the child's home state within the meaning of the UCCJEA. It then stated: "If there is a home state for this child, and it is not clear that the child even had a home state under the UCCJEA . . . this court finds that Connecticut is the home state." (Citation omitted.) The respondents have not challenged the factual findings of the court in their briefs. Additionally, at oral argument before this court, counsel for the respondent mother specifically acknowledged that the factual findings were not being challenged on appeal.

Our statutes establish the jurisdiction for a Connecticut court to make the initial child custody determination.[8] Specifically, § 46b-115k (a) provides in relevant part: "Except as otherwise provided in section 46b-115n, a court of this state has jurisdiction to make an

---

[8] General Statutes § 46b-115a (3) provides: " 'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual . . . ." See Mass. Gen. Laws c. 209B, § 1.

Section 46b-115a (8) provides: " 'Initial determination' means the first child custody determination concerning a particular child . . . ." See Mass. Gen. Laws c. 209B, §1.

initial child custody determination if . . . (3) A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships . . . ." The aforementioned factual findings support our conclusion that the Connecticut court, pursuant to § 46b-115k (a) (3), had subject matter jurisdiction to make the initial child custody determination.

We are not persuaded by the argument advanced by the respondents that, because the child was born in Massachusetts and the respondents purported to be residents there, it was for the Massachusetts courts to make the initial child custody determination. The respondents have not provided this court with a citation to any statute or case that supports this proposition. Although it would appear that a Massachusetts court *could have* made the initial child custody determination, or participated and been involved in the case in some manner, we fail to see any basis whereby it would have *initial* jurisdiction or priority over a Connecticut court. See General Statutes § 46b-115k; Mass. Gen. Laws c. 209B, § 2.

Likewise, we are not persuaded that the respondent mother had a due process right to have an evidentiary hearing in Massachusetts. The respondent mother has failed to establish a right to have a Massachusetts court exclusively make the initial child custody determination, and, therefore, there is no deprivation of due process because a hearing was not conducted there. Her constitutional rights were safeguarded during the proceeding before the Superior Court in Connecticut.

The judgment is affirmed.

In this opinion the other judges concurred.