******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

ELGO, J., concurring in part and dissenting in part. The present case exemplifies the confounding nature that child custody proceedings can take when a court is tasked to decide whether it has jurisdiction to modify a child custody order despite a proceeding having been commenced in another state. When such circumstances arise, it is imperative that the statutory scheme of the Uniform Child Custody Jurisdiction and Enforcement Act (act), General Statutes § 46b-115 et seq., is applied in a formulaic manner in order to effectuate the public policy goals at its foundation. The majority concludes that issues of fact remain as to whether Connecticut was the home state of the child at the time the plaintiff, Jason S. Parisi, commenced the *Connecticut proceeding* to modify a child custody judgment rendered in Florida. On the basis of a plain reading and application of the act, I would conclude, to the contrary, that the relevant proceeding for determining the child's home state is the Florida proceeding in question. Because there are no issues of fact concerning the child's home state at the time that the Florida proceeding was commenced, and because the Florida court has before it a pending motion over which it has not relinquished its jurisdiction to adjudicate, I would conclude that the trial court properly determined that it lacked jurisdiction to modify the original child custody decree and dismissed the action. Accordingly, I respectfully dissent from part II of the majority opinion.[1]

Before addressing the merits of the plaintiff's claim, I begin with the policies and purposes of the act. As this court has observed, "[t]he purposes of the [act] are to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; promote cooperation with the courts of other states; discourage continuing controversies over child custody; deter abductions; avoid [relitigation] of custody decisions; and to facilitate the enforcement of custody decrees of other states." (Internal quotation marks omitted.) *In re Iliana M.*, 134 Conn. App. 382, 390, 38 A.3d 130 (2012). The Supreme Court of New Hampshire recently elaborated on the reasons that prompted the act's enactment. As it explained: "The [act] was promulgated, in part, to resolve issues resulting from decades of conflicting court decisions interpreting and applying the [Uniform Child Custody Jurisdiction Act (UCCJA)]. . . . The UCCJA turned out to have exploitable loopholes allowing for concurrent jurisdiction in more than one state, which encouraged jurisdictional competition . . . and forum shopping. . . . The [act] addressed these problems, in part, by making clear that [t]he continuing jurisdiction of the original decree [s]tate is exclusive." (Citations omitted; internal quotation marks omitted.) *In re Guardianship of K.B.*, Docket No. 2019-

0126, 2019 WL 5496009, *2 (N.H. October 25, 2019). The act, therefore, reflects "a pact among states limiting the circumstances under which one court may modify the orders of another." *In re Custody of A.C.*, 165 Wn. 2d 568, 574, 200 P.3d 689 (2009) (en banc). Through this pact among states, the act seeks to control the circumstances under which a court in one state is permitted to modify an original child custody decree rendered in another. See 24A Am. Jur. 2d Divorce and Separation 631, § 1072 (2018) ("[i]n accord with the letter of the [act], concerning modification of custody decrees of courts of other states, and its purpose to achieve greater stability of custody arrangements and avoid forum shopping, all petitions for modification must be addressed to the state that rendered the original decree if that state had and retains jurisdiction under the standards of the [act]").

With that fundamental purpose in mind, I now provide a brief review of the relevant portions of Connecticut's version of the act, which governs the modification of a child custody decree rendered in another state. My analysis begins with and is constrained by the dictates of General Statutes § 46b-115m,[2] which, by its terms, provides the exclusive basis by which a Connecticut court is permitted to modify a child custody determination of a foreign state.

Section 46b-115m provides in relevant part: "(a) Except as otherwise provided in section 46b-115n, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an *initial determination* under subdivisions (1) to (4), inclusive, of subsection (a) of section 46b-115k *and* one of the following occurs  . . . ." (Emphasis added.) Accordingly, the initial inquiry is whether the court has jurisdiction to make an initial child custody determination under any of the first four subdivisions of § 46b-115k (a).[3] Conversely, because of the use of the conjunctive "and," if a court of this state does not have jurisdiction to make an initial child custody determination under any of those first four provisions, the inquiry ends.

Turning to the first of those subdivisions, § 46b-115k (a) (1) provides that "[e]xcept as otherwise provided in section 46b-115n, a court of this state has jurisdiction to make an *initial child custody determination* if: (1) This state is the home state of the child on the date of the commencement of the child custody proceeding." (Emphasis added.) Critical to this subdivision is determining the relevant "child custody proceeding." In the present case, we must discern whether the *initial* child custody proceeding under § 46b-115k (a) contemplates the Florida marital dissolution proceeding commenced sometime near March, 2016, or the Connecticut modification proceeding commenced in October, 2018.

Resolving that question requires looking to the statu-

tory definitions of key terms found in §§ 46b-115k and 46b-115m. It is well settled that "when a statutory definition applies to a statutory term, the courts must apply that definition." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 536, 46 A.3d 102 (2012). Further providing guidance is "the principle that the legislature is always presumed to have created a harmonious and consistent body of law. . . . [T]his tenet of statutory construction . . . requires us to read statutes together when they relate to the same subject matter. . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." (Internal quotation marks omitted.) *State* v. *Fernando A.*, 294 Conn. 1, 21, 981 A.2d 427 (2009).

True to its title, § 46b-115k serves to determine whether a court has jurisdiction to make an "initial child custody determination." The act defines the term " '[i]nitial determination' " as "the first *child custody determination* concerning a particular child . . . ." (Emphasis added.) General Statutes § 46b-115a (8). It further defines " '[c]hild custody determination' " as "a judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order . . . ." General Statutes § 46b-115a (3).

Section 46b-115a (7) also provides a definition of the term " '[h]ome state,' " defining it in relevant part as "the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the *commencement* of a *child custody proceeding*." (Emphasis added.) " 'Commencement' " is also defined as "the filing of the first pleading in a proceeding . . . ." General Statutes § 46b-115a (5). Lastly, the act defines " '[c]hild custody proceeding' " in relevant part as "a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue. The term includes a proceeding for dissolution of marriage, divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence, in which the issue may appear. . . ." General Statutes § 46b-115a (4).

Bound by those definitions, I now look to apply them to § 46b-115k (a) in a manner that provides consistency—between both the terms and the statutes that employ them. Read together, §§ 46b-115k (a) (1) and 46b-115m (a) provide that a Connecticut court has jurisdiction to modify another state's decree only if, as a prerequisite, Connecticut "is the home state of the child on the date of the commencement of the child custody proceeding . . . ." In its more elaborated form, the statute provides as follows: A Connecticut court has

jurisdiction to modify another state's decree only if, first, Connecticut has jurisdiction to make the *first* judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. Compare General Statutes § 46b-115k (a) (1) with General Statutes § 46b-115m (a). Under § 46b-115k (a) (1), Connecticut must be the state in which the child lived with a parent or person acting as a parent for at least six consecutive months immediately before the *first* filing or pleading of the proceeding in which legal custody, physical custody or visitation with respect to that child is an issue. I therefore respectfully submit that a plain reading of the statute in light of its defined terms compels the conclusion that the "child custody proceeding" at issue under § 46b-115k (a) (1) refers back to the *first* proceeding in which the child's custody was at issue.

That conclusion finds further support in the relative locations of the terms "initial child custody determination" and "child custody proceeding" in § 46b-115k (a). The contiguity of the phrase "the child custody proceeding" with "initial child custody determination" strongly suggests that the former relates back to the latter. Therefore, under subdivision (1) of that statute, "the child custody proceeding" at issue can only logically refer to the proceeding that concerns the *initial* child custody determination. Otherwise, there would be no purpose for the language found in § 46b-115m that explicitly conditions jurisdiction to modify another state's child custody determination only if "a court of [Connecticut] has jurisdiction to make an *initial determination* under [one of § 46b-115k (a) (1) through (4)] . . . ." (Emphasis added.) Indeed, "[m]odification means a child custody determination that changes, replaces, supersedes or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the prior custody determination . . . ." (Internal quotation marks omitted.) General Statutes § 46b-115a (11). It is, therefore, inconsistent with the statutory text to conclude that a modification proceeding could be considered as the *first* proceeding in which a determination of the child's custody is at issue. Had the act envisioned the modification proceeding to qualify as the "child custody proceeding" under § 46b-115k (a) (1)—as opposed to the proceeding that resulted in the initial child custody determination—it would have provided for that distinction in either of the aforementioned statutes. It does not, and, instead, expressly limits a court's jurisdiction to modify a foreign court's decree only if the court is the home state of the child at the time the initial child custody determination is made.

In the record before us, the Final Judgment of Dissolution of Marriage with Minor Children, attached to the certification filed by the plaintiff on September 17, 2018, documents the jurisdictional findings by the Florida

court when it dissolved the marriage and issued custodial orders. It specifically found that (1) it had jurisdiction over the parties, (2) the petitioner had been a resident of Florida for a least six months prior to the commencement of the action, (3) Florida was the home state of the child, (4) it had continuing jurisdiction pursuant to Florida law and the UCCJEA, and (5) it was the sole jurisdictional state to determine child custody. Moreover, the Florida court declared that it "expressly retains jurisdiction of this cause for the purposes of enforcing, construing, interpreting, or modifying the terms of this [f]inal [j]udgment . . . ." Thus, there can be no dispute that the Florida dissolution proceeding—commenced at some point prior to the March 23, 2016 dissolution judgment—rendered the initial child custody determination concerning custody of the child at issue here.

Importantly, the Florida court expressly retained its jurisdiction during the telephone call between that court and the Connecticut court. On the basis of these facts, an evidentiary hearing is entirely unnecessary and, indeed, improper. Accordingly, the Florida court's unambiguous declination to relinquish its jurisdiction during the telephone communications is dispositive. The dissolution judgment rendered in Florida constitutes an initial child determination and, thus, is a bell that cannot be unrung for purposes of modification under § 46b-115m.

In my view, the majority's contrary conclusion also is at odds with a primary purpose of the act: to prevent jurisdictional competition, conflict, and forum shopping. See *In re Iliana M.*, supra, 134 Conn. App. 390; see also annot., Construction and Operation of Uniform Child Custody Jurisdiction and Enforcement Act, 100 A.L.R.5th 1 (2002), prefatory commentary (noting that UCCJA's "exploitable loopholes" encouraged jurisdictional competition, conflict, and forum shopping, problem that "the [act] has attempted to address by prioritizing home-state jurisdiction"). In the present case, the plaintiff originally filed a "supplemental petition for modification of time sharing" with the Florida court on April 12, 2017, to which the defendant, Abby Niblett, filed a motion to dismiss. The plaintiff thereafter moved to Connecticut in October, 2017, and filed on December 14, 2017, an amended supplemental petition for modification and petition to relocate. On January 4, 2018, the defendant filed an answer to the amended petition, and on August 9, 2018, filed an "emergency motion for return of the minor child" in the Florida court. On September 13, 2018, the plaintiff withdrew his motion in the Florida court, followed shortly thereafter by the defendant's own petition for modification in Florida filed on September 22, 2018. On October 9, 2018, the plaintiff instituted the underlying proceedings in Connecticut seeking a postjudgment modification of the Florida judgment.[4] There can be little doubt as to the effect of

the Connecticut action; two modification proceedings now are pending in the courts of two different states regarding the judgment originally rendered in Florida. Should the Connecticut court, on remand, determine that it possesses subject matter jurisdiction over the plaintiff's motion based on the majority's interpretation of the act, how will two separate determinations on the two motions to modify be reconciled should the Florida court dispose of the pending motion before it? In short, this is precisely the conundrum that, in supplanting the UCCJA, the act sought to avoid.

The majority opinion suggests that my interpretation would "confer perpetual jurisdiction over matters of custody to the courts of the state, which granted the dissolution, regardless of whether the parties or child had any further connection with that state . . . a result that is contrary to the underlying purpose of the [act] . . . ."[5] (Internal quotation marks omitted. See part II of the majority opinion (quoting *Friedman* v. *Eighth Judicial District Court*, 127 Nev. 842, 849, 264 P.3d 1161 (2011)). I respectfully and fundamentally disagree. Under my reading of the statutes in question, a Connecticut court would have jurisdiction to modify a custody determination if the court *of the other state* determines that it no longer has exclusive, continuing jurisdiction under its version of § 46b-115*l*, provided that a court of this state satisfies one of the first four subdivisions of § 46b-115k. See General Statutes § 46b-115m (a). Had the plaintiff brought this issue to the Florida court, that court—and not this court—could properly have determined that it no longer has exclusive, continuing jurisdiction. See generally Fla. Stat. Ann. § 61.515 (West 2002) (Florida's version of § 46b-115*l* (a)). As a result, the Florida court would be presented with two options. The first would be to nevertheless retain jurisdiction under its version of § 46b-115k—notwithstanding its loss of exclusive, continuing jurisdiction—in order to dispose of any pending matters before it. See Fla. Stat. Ann. § 61.515 (2) (West 2002) ("[a] court of [Florida] which has made a child custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under [section] 61.514"). The alternative, of course, would be for the Florida court to decline to exercise jurisdiction. In the latter scenario, both §§ 46b-115k (a) (4) and 46b-115m (a) are satisfied and the resulting effect would be that the Connecticut court has jurisdiction to modify Florida's original decree.

The statutory scheme in the present case plainly envisions that the Florida court—as the home state of the child at the time the original child custody proceedings were commenced—be given deference to make that initial determination. It is not within the purview of a court of this state to upend the Florida court's statutory authority to do so. Consistent with the primary purpose

of the act, a court that is presented with a modification petition should not become a tool to be wielded by a party to escape a foreign court's jurisdiction by virtue of simply leaving the state.[6] On the record before us, I have little doubt that the Florida court in this case likely would decline to exercise its jurisdiction after it dealt with the matters that it has yet to resolve. Indeed, it may very well be compelled to do so given the present posture of the case. The judge of the Connecticut Superior Court rightfully acknowledged the Florida court's authority to make that decision during the telephone conference, and, noting the defendant's unresolved countermotion before the Florida court in its articulation, dismissed the Connecticut action. The majority opinion deprives the Florida court from exercising its statutory power, thereby upending the core policies and purposes of the act. As a result of today's decision, parties will be permitted to circumvent the careful process of transferring jurisdiction by simply absconding from the state in which the initial child custody determination was rendered.

The analysis advanced by both the majority and the plaintiff is not saved by the remaining subdivisions of § 46b-115k (a) (2) through (4). Under § 46b-115k (a) (2), Connecticut was not "the home state of the child within six months of the commencement of the child custody proceeding . . . ." Subdivision (3) also fails because a court of another state, namely Florida, *does* have jurisdiction under its version of subdivision (1) of § 46b-115k (a). Lastly, subdivision (4) is not satisfied because Florida did not decline to exercise jurisdiction on the ground that Connecticut is the more appropriate forum. See General Statutes § 46b-115k (a) (4). Instead, it expressly stated its intent to retain jurisdiction despite the parties having left that state. Between the pending motions before it and its familiarity with the long history of this dispute among the parties, the Florida court was within its authority to forgo declining jurisdiction. This was the only vehicle by which the Connecticut court could satisfy § 46b-115k (a) as a prerequisite to obtaining jurisdiction to modify a foreign state's judgment under § 46b-115m. The plaintiff was fully entitled to have this matter addressed by the Florida court. Instead, he chose to use the Connecticut court to break from the yoke of the Florida court's jurisdiction— despite the act's mandate that courts prevent him from doing so. I therefore would conclude that the trial court in the present case properly dismissed the plaintiff's motion to modify for lack of subject matter jurisdiction.

Given my belief that no issues of fact exist surrounding whether the Connecticut court has jurisdiction under § 46b-115k (a) (1) through (4), that conclusion should be the first and last stop in disposing of the plaintiff's claim. The majority opinion, however, takes a different approach. Instead of first determining the threshold issue of whether the court has jurisdiction

to make an initial determination under § 46b-115k (1) through (4), the majority opinion begins its analysis by skipping this initial inquiry and proceeding to the second part of § 46b-115m. It determines that the trial court improperly applied the law by relying on the Florida court's determination that it retained exclusive, continuing jurisdiction. I respectfully disagree with the majority opinion's analysis and conclusion.

The majority opinion properly assesses this issue under Florida law. Looking to Fla. Stat. Ann. § 61.515, which is Florida's equivalent to § 46b-115*l*, I respectfully submit that the Florida court properly determined that it had exclusive, continuing jurisdiction. Section 61.515 provides in relevant part: "(1) Except as otherwise provided in s. 61.517, a court of [Florida] which has made a child custody determination consistent with s. 61.514 or s. 61.516 has exclusive, continuing jurisdiction over the determination until: (a) A court of [Florida] determines that the child, the child's parents, and any person acting as a parent do not have a significant connection with [Florida] and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (b) A court of [Florida] or a court of another state determines that the child, the child's parent, and any person acting as a parent do not presently reside in [Florida]." Fla. Stat. Ann. § 61.515 (West 2002).

As noted by the majority opinion, the comment to § 202 of the act provides that "*unless a modification proceeding has been commenced*, when the child, the parents, and all persons acting as parents physically leave the [s]tate to live elsewhere, the exclusive, continuing jurisdiction ceases." (Emphasis added.) Unif. Child Custody and Enforcement Act (1997), § 202, comment, 9 U.L.A. (Pt. IA) 511 (2019); see also S. Stephens, 23 Florida Practice: Florida Family Law (Rev. 2020) § 7:14 ("[t]ermination [of jurisdiction] by operation of law occurs when all of the parties have moved out of the state unless there is a pending custody proceeding" (footnote omitted)). Although I acknowledge this commentary, it is my view that the majority opinion incorrectly applies it to the facts of the present case. The record reflects that, on April 12, 2017, the plaintiff filed a petition for modification in the Florida court. The plaintiff thereafter moved to Connecticut in 2017. It was not until September 13, 2018, that the plaintiff voluntarily withdrew his petition in Florida. Yet, before that withdrawal, the defendant filed an "emergency motion for return of the minor child" on August 9, 2018, in the Florida court. Additionally, the defendant filed her own petition for modification in Florida nine days after the plaintiff's voluntary withdrawal. Finally, more than two weeks later, on October 9, 2018, the plaintiff filed his motion for modification in the Connecticut court.[7] Thus, the record clearly establishes that, as of the date of the plaintiff's institution of the Connecticut action, through

to the date of the hearing before the court, there was a pending motion before the Florida court.

Given these facts, it is of little significance that the plaintiff withdrew his petition for modification—the defendant had already filed an emergency motion in the Florida court and would file her own petition for modification shortly after the plaintiff's withdrawal. See *Cabrera* v. *Mercado*, 230 Md. App. 37, 83–82, 146 A.3d 567 (2016) (because plaintiff filed proceeding for protective order in Maryland prior to commencing proceeding in Puerto Rico, Maryland retained exclusive, continuing jurisdiction). Therefore, I believe that the Florida court exercised its right to maintain exclusive, continuing jurisdiction under Fla. Stat. Ann. § 61.515. Under such circumstances, the Connecticut court is precluded from modifying the judgment under § 46b-115m. See Unif. Child Custody and Enforcement Act (1997), § 203, comment, 9 U.L.A. (Pt. 1A) 516. (noting that parallel statute of § 46b-115m "prohibits a court from modifying a custody determination made consistently with [the act] by a court in another [s]tate unless a court of that [s]tate determines that it no longer has exclusive, continuing jurisdiction"); see also P. Hoff, "The ABC's of the UCCJEA: Interstate Child-Custody Practice Under the New Act," 32 Fam. L.Q. 267, 282 (1998) ("[a] court in the new home state cannot modify the initial decree unless the decree state loses [exclusive, continuing jurisdiction], or declines to exercise [exclusive, continuous jurisdiction], or declines to exercise [exclusive, continuous jurisdiction] on inconvenient forum grounds in favor of the second state"). Thus, no issues of fact exist for the trial court to settle for purposes of determining whether it has subject matter jurisdiction to modify the Florida child custody determination. Accordingly, I would affirm the judgment of the trial court dismissing the motion to modify for lack of subject matter jurisdiction.

For the foregoing reasons, I respectfully concur in part and dissent in part.

[1] I fully agree with part I of the majority opinion and, accordingly, join it in all respects.

[2] General Statutes § 46b-115m provides: "(a) Except as otherwise provided in section 46b-115n, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under subdivisions (1) to (4), inclusive, of subsection (a) of section 46b-115k and one of the following occurs: (1) The court of the other state determines that it no longer has exclusive, continuing jurisdiction under a provision substantially similar to section 46b-115*l*; (2) a court of another state determines that a court of this state would be a more convenient forum under a provision substantially similar to section 46b-115q; or (3) a court of this state or another state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state."

[3] General Statutes § 46b-115k provides: "(a) Except as otherwise provided in section 46b-115n, a court of this state has jurisdiction to make an initial child custody determination if: (1) This state is the home state of the child on the date of the commencement of the child custody proceeding; (2) This state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside in this state; (3)

A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (4) A court of another state which is the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under a provision substantially similar to section 46b-115q or section 46b-115r, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships; (5) All courts having jurisdiction under subdivisions (1) to (4), inclusive, of this subsection have declined jurisdiction on the ground that a court of this state is the more appropriate forum to determine custody under a provision substantially similar to section 46b-115q or section 46b-115r; or (6) No court of any other state would have jurisdiction under subdivisions (1) to (5), inclusive, of this subsection."

"(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state."

[4] As the majority opinion correctly notes, we are obligated to give full faith and credit to child custody determinations of a foreign state rendered in conformity with the act and the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (2018). See footnote 15 of the majority opinion.

[5] The majority's emphasis on this quotation in support of its conclusion is misplaced. The origin of this particular quote can be traced to *Kioukis* v. *Kioukis*, 185 Conn. 249, 257, 440 A.2d 894 (1981), in which our Supreme Court interpreted the now-repealed UCCJA—not the act presently before us. "Given the substantially different principles now governing the issue of jurisdiction to modify an existing order, decisions under the UCCJA which discuss the issues, such as *Kioukis* . . . should not be viewed as representing the law or analysis which would apply under the [act] on the jurisdiction issue." (Footnotes omitted.) A. Rutkin et al., 8 Connecticut Practice Series: Family Law and Practice (2010) § 40:10, p. 451.

[6] This concern is touched on in the majority opinion in its discussion of defining "presently reside" for purposes of determining if the child and his or her parents have vacated the original decree state. See footnote 14 of the majority opinion.

[7] It is not lost on me that this flurry of events happened so close in time. In fact, the timing and sequence of filings raise the specter of forum shopping, a practice that the act seeks to avoid. See *In re Custody of A.C.*, supra, 165 Wn. 2d 574; cf. *Martinez* v. *Empire Fire & Marine Ins. Co.*, 322 Conn. 47, 62, 139 A.3d 611 (2016) ("[a]dopting a different interpretation in the present case would create confusion . . . and would potentially encourage forum shopping"); *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 393 n.25, 125 A.3d 905 (2015) (admonishing party for engaging in forum shopping).