******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# AMMAR I. *v.* EVELYN W.*
## (AC 46544)

Alvord, Elgo and Seeley, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court dismissing his petition for third-party visitation with three minor children, with respect to whom his parental rights previously had been terminated. *Held*:

1. The trial court properly determined that it lacked subject matter jurisdiction over the petition; it was not disputed that Connecticut was not the home state of the children pursuant to the applicable statutes (§§ 46b-115a and 46b-115k) when the plaintiff commenced this child custody proceeding, as the children had lived with the defendant in North Carolina for more than six months before this proceeding commenced, and, because North Carolina possessed home state jurisdiction over visitation petitions involving the children, the trial court did not have jurisdiction pursuant to § 46b-115k (a) (3).

2. The plaintiff could not prevail on his alternative claim that the trial court improperly concluded that the accidental failure of suit statute (§ 52-592) did not apply in the present case; because § 52-592 operates to toll a statute of limitations, a necessary prerequisite to its application is the existence of a statute of limitations that would otherwise bar the cause of action at issue, and, here, the plaintiff did not identify any statute of limitations pertaining to petitions for third-party visitation and the defendant did not raise a statute of limitations defense.

Submitted on briefs March 5—officially released September 10, 2024

*Procedural History*

Petition for third-party visitation with three minor children, brought to the Superior Court in the judicial district of Waterbury and transferred to the judicial district of New Britain, where the court, *Armata, J.*, rendered judgment dismissing the petition, from which the plaintiff appealed to this court. *Affirmed.*

*Ammar I.*, self-represented, the appellant (plaintiff).

---

* In accordance with our policy of protecting the privacy interests of minor children, we decline to identify the children or others through whom the children's identities may be ascertained.

*Opinion*

ELGO, J. The self-represented plaintiff, Ammar I., appeals from the judgment of the trial court dismissing his petition for third-party visitation with O, S, and M (children), his biological children with respect to whom his parental rights were terminated in 2019. Although the plaintiff raises various claims on appeal, the dispositive ones are whether the court properly determined that (1) it lacked subject matter jurisdiction over the petition pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (act), which has been adopted by Connecticut and codified at General Statutes § 46b-115 et seq., and (2) General Statutes § 52-592 does not apply in the present case. We affirm the judgment of the trial court.

The facts underlying this appeal are largely undisputed. On July 26, 2019, the plaintiff's parental rights were terminated with respect to the children. See *In re Omar I.*, 197 Conn. App. 499, 506, 231 A.3d 1196, cert. denied, 335 Conn. 924, 233 A.3d 1091, cert. denied sub nom. *Ammar I.* v. *Connecticut*, U.S. , 141 S. Ct. 956, 208 L. Ed. 2d 494 (2020). In 2021, a final decree of adoption was issued, at which time the defendant, Evelyn W., became the adoptive parent of the children. See General Statutes § 45a-731. The trial court thereafter dismissed the plaintiff's motion to open and set aside that decree and denied his posttermination motion for visitation with the children. See *In re Omar I.*, 214 Conn. App. 1, 3–4, 279 A.3d 320, cert. denied, 345 Conn. 913, 283 A.3d 981 (2022); *In re Omar I.*, Docket Nos. CP-20013333-A, CP-20013334A, CP-20013335A, 2021 WL 3727802, *1, 8–9 (Conn. Super. July 27, 2021).

In October, 2021, the defendant and the children moved to North Carolina. On November 9, 2022, the

plaintiff commenced the present action by filing a verified petition for visitation in the Superior Court in the judicial district of Waterbury. He did so by completing form JD-FM-221, provided by the Judicial Branch, titled "Verified Petition for Visitation—Grandparents & Third Parties," "which a nonparent may choose to use to seek visitation with a child." *Hunter* v. *Shrestha*, 195 Conn. App. 393, 395 n.5, 225 A.3d 285 (2020). In the section pertaining to jurisdiction over the petition, the plaintiff selected a box that states in relevant part that Connecticut has the authority to decide this case because "[t]he [children] lived in Connecticut for at least [six] months but . . . were taken from Connecticut less than [six] months ago . . . by a person claiming custody, and a parent or guardian continues to live here."[1] Because no party to the action resided in the judicial district of Waterbury, the case was administratively transferred to the Superior Court in the judicial district of New Britain.

The defendant filed a self-represented appearance on December 5, 2022, and a hearing on the petition was scheduled. On February 7, 2023, the defendant filed a caseflow request seeking a virtual hearing, in which she averred: "I am no longer a resident of Connecticut. I relocate[d] to North Carolina in 2021. I am unable to appear in person due to my circumstances here at home with my children [because] some of them cannot be left unattended." The court granted that request, and a remote hearing was held on February 10, 2023.

At that hearing, the defendant "credibly testified that she and the children relocated to North Carolina in October of 2021," as the court found in its memorandum of decision. The court subsequently ordered the plaintiff to file a supplemental brief addressing several jurisdictional issues raised at that hearing, including "[h]ow

[1] The plaintiff at that time was not a parent or guardian of the children due to the termination of his parental rights three years earlier.

this court currently has jurisdiction over [the] children pursuant to the [act], in light of the fact that the minor children have not resided within the state of Connecticut since October, 2021."

On March 3, 2023, the plaintiff filed his supplemental brief, in which he claimed that the court "has jurisdiction over [the] children pursuant to the [act] *despite* the fact that [the] children have not resided within the state of Connecticut since October, 2021." (Emphasis in original.) The plaintiff argued that Connecticut courts retain "concurrent jurisdiction over a child custody proceeding" pursuant to the act. The defendant did not file a responsive pleading.

In its April 27, 2023 memorandum of decision, the court concluded, inter alia, that Connecticut was not the home state of the children, as they had resided in North Carolina with the defendant for more than six consecutive months prior to the commencement of this action. The court thus concluded that it lacked subject matter jurisdiction and dismissed the petition for third-party visitation. The plaintiff filed a motion to reargue, which the court denied, and this appeal followed.[2]

I

On appeal, the plaintiff claims that the court improperly concluded that it lacked subject matter jurisdiction over his petition for third-party visitation pursuant to the act. We do not agree.

"When reviewing an issue of subject matter jurisdiction on appeal, [our Supreme Court has] long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review

---

[2] The self-represented defendant appeared, but has not participated, in this appeal. Because she did not file an appellate brief, we ordered that the appeal be considered on the basis of the plaintiff's brief, oral argument, and the record. On February 29, 2024, the plaintiff filed a request to waive oral argument, which this court granted.

is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction." (Internal quotation marks omitted.) *Sousa* v. *Sousa*, 322 Conn. 757, 770, 143 A.3d 578 (2016).

As this court has noted, "[t]he purposes of the [act] are to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; promote cooperation with the courts of other states; discourage continuing controversies over child custody; deter abductions; avoid re-litigation of custody decisions; and to facilitate the enforcement of custody decrees of other states. . . . The [act] addresses interjurisdictional issues related to child custody and visitation." (Internal quotation marks omitted.) *In re Iliana M.*, 134 Conn. App. 382, 390, 38 A.3d 130 (2012). Importantly, the act serves as "the enabling legislation for the court's jurisdiction" over child custody and visitation matters. Id.

The jurisdiction of a Connecticut court to make an initial child custody determination originates in General Statutes § 46b-115k (a).[3] "Section 46b-115k (a) (1) through (4) establishes a hierarchy of four bases that

---

[3] General Statutes § 46b-115k (a) provides in relevant part: "Except as otherwise provided in section 46b-115n, a court of this state has jurisdiction to make an initial child custody determination if:

"(1) This state is the home state of the child on the date of the commencement of the child custody proceeding;

"(2) This state was the home state of the child within six months of the commencement of the child custody proceeding, the child is absent from the state, and a parent or a person acting as a parent continues to reside in this state;

"(3) A court of another state does not have jurisdiction under subdivisions (1) or (2) of this subsection, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships;

grant a state jurisdiction to make an initial custody determination: home state jurisdiction, significant connection jurisdiction, and more appropriate forum jurisdiction."[4] *Parisi* v. *Niblett*, 199 Conn. App. 761, 780–81, 238 A.3d 740 (2020). The question in the present case is whether any of those four bases authorized the trial court to act on the plaintiff's petition for third-party visitation.

The record indicates, and the plaintiff does not dispute, that Connecticut was not the home state of the children on November 9, 2022, the date that he commenced this child custody proceeding.[5] General Statutes § 46b-115a (7) defines "home state" in relevant part as "the state in which a child lived with a parent or person acting as a parent for at least six consecutive months immediately before the commencement of a

"(4) A court of another state which is the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under a provision substantially similar to section 46b-115q or section 46b-115r, the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence, and there is substantial evidence available in this state concerning the child's care, protection, training and personal relationships . . . ."

[4] As this court has observed, subdivisions (1) and (2) of § 46b-115k (a) set forth two distinct bases by which home state jurisdiction may be established. See *Parisi* v. *Niblett*, 199 Conn. App. 761, 782, 238 A.3d 740 (2020); see also 8 Connecticut Practice Series: Family Law and Practice with Forms (3d Ed. 2010) § 40:5, p. 441 ("[the] first ground for jurisdiction for an initial custody determination set forth in [§] 46b-115k (a) (1) and (2) is commonly referred to as 'home-state' jurisdiction").

[5] "[W]hen a statutory definition applies to a statutory term, the courts must apply that definition." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 305 Conn. 523, 536, 46 A.3d 102 (2012). For purposes of the act, a "child custody proceeding" is defined in relevant part as "a proceeding in which legal custody, physical custody or *visitation* with respect to a child is an issue. . . ." (Emphasis added.) General Statutes § 46b-115a (4). The "commencement" of such a proceeding, in turn, is defined as "the filing of the first pleading in a proceeding . . . ." General Statutes § 46b-115a (5). The official case detail indicates that the first pleading in the present case was filed on November 9, 2022.

child custody proceeding. . . .” Pursuant to § 46b-115k
(a) (1) and (2), home state jurisdiction exists when
Connecticut is either (1) “the home state of the child
on the date of the commencement of the child custody
proceeding” or (2) “the home state of the child within
six months of the commencement of the child custody
proceeding” and other conditions are met. Because it
is undisputed that the children lived with the defendant
in North Carolina more than six months prior to the
commencement of this child custody proceeding, the
court properly determined that it did not have jurisdic-
tion under the first two bases set forth in § 46b-115k (a).[6]

The plaintiff nonetheless argues that the court pos-
sessed jurisdiction over his petition pursuant to the
third basis set forth in that statute. Section 46b-115k
(a) (3) confers jurisdiction on the courts of this state
when “[a] court of another state does not have jurisdic-
tion under subdivisions (1) or (2) of this subsection,
the child and at least one parent or person acting as a
parent have a significant connection with this state
other than mere physical presence, and there is substan-
tial evidence available in this state concerning the
child’s care, protection, training and personal relation-
ships.” By its plain language, that third basis for jurisdic-
tion “exists when a court of another state does not have
home state jurisdiction . . . .” *Parisi* v. *Niblett*, supra,
199 Conn. App. 784. Because it is undisputed that the
children lived with the defendant in North Carolina
since October, 2021—approximately thirteen months

---

[6] In light of the plaintiff’s concession that the children had resided in North
Carolina with the defendant for more than six months prior to November
9, 2022, the date on which he commenced this proceeding, the court was
not required to hold an evidentiary hearing on the issue of whether Connecti-
cut was the children’s home state pursuant to the act. See *Pinchbeck* v.
*Dept. of Public Health*, 65 Conn. App. 201, 209, 782 A.2d 242 (“[i]n the absence
of any disputed facts pertaining to jurisdiction, a court is not obligated to
hold an evidentiary hearing before dismissing an action for lack of jurisdic-
tion”), cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).

prior to the commencement of this child custody proceeding—the state of North Carolina possessed home state jurisdiction over visitation petitions involving them. See N.C. Gen. Stat. §§ 50A-102 (7) and 50A-201 (a) (1) (2023).[7] Accordingly, § 46b-115k (a) (3) does not authorize the courts of this state to act on the plaintiff's petition for third-party visitation. We therefore concur with the observation of the trial court in its memorandum of decision "that Connecticut is not the home state of the children and that North Carolina . . . is the appropriate forum to decide such a [petition]."[8]

---

[7] Like § 46b-115a (7), § 50A-102 (7) of the North Carolina General Statutes defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period."

Like § 46b-115k (a) (1) and (2), § 50A-201 (a) (1) of the North Carolina General Statutes confers jurisdiction on the courts of that state "to make an initial child-custody determination" if North Carolina "is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State . . . ."

[8] In light of the court's determination that North Carolina was the home state of both the children and the defendant at the time that this petition for third-party visitation was commenced, the plaintiff's ancillary invocation of General Statutes § 46b-115*l* (a) also is unavailing. That statute provides in relevant part that "a court of this state which has made a child custody determination . . . has exclusive, continuing jurisdiction over the determination until: (1) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state . . . ." General Statutes § 46b-115*l* (a); see *Parisi* v. *Niblett*, supra, 199 Conn. App. 779 ("[p]ursuant to the [act], exclusive continuing jurisdiction ends . . . when either the original decree state or another state determines that neither parent nor the child continues to reside in the original decree state"). We reiterate that the court found—and the plaintiff does not dispute—that the children and the defendant did not reside in Connecticut when this action was commenced or at any time thereafter. Moreover, due to the termination of the plaintiff's parental rights in 2019 and the adoption of the children by the defendant in 2021, the plaintiff was not a "parent" or a "person acting as a parent," as those terms are used in § 46b-115*l* (a). As the plaintiff acknowledges in his appellate

We further note that the plaintiff has not argued that the fourth and final basis for jurisdiction under § 46b-115k (a) applies, and for good reason: there is no allegation or evidence that a court of another state that is the home state of the children has declined to exercise jurisdiction on the ground that Connecticut is the more appropriate forum. See General Statutes § 46b-115k (a) (4). On our plenary review, we therefore conclude that the court properly determined that it lacked subject matter jurisdiction over the plaintiff's petition under the act.

II

The plaintiff alternatively argues that the court improperly concluded that the accidental failure of suit statute, § 52-592, does not apply in this case. We disagree.

The following additional facts are relevant to this claim. The plaintiff commenced a separate proceeding seeking third-party visitation with the children on March 21, 2022.[9] The trial court dismissed that petition due to improper service of process. The plaintiff then commenced the present proceeding by filing a new petition for third-party visitation on November 9, 2022. Although he utilized the "Verified Petition for Visitation—Grandparents & Third Parties" form provided by the Judicial Branch, his submission differs from the official JD-FM-221 form in one notable respect. In the upper left corner of the form, underneath the preprinted

brief, the defendant was "the sole custodial parent of the children" at all times relevant to this appeal. The plaintiff's contention that the trial court possessed continuing jurisdiction pursuant to § 46b-115*l* (a) is thus untenable.

[9] It is well established that an appellate court may "take judicial notice of the court files in another suit between the parties . . . ." *McCarthy* v. *Warden*, 213 Conn. 289, 293, 567 A.2d 1187 (1989), cert. denied, 496 U.S. 939, 110 S. Ct. 3220, 110 L. Ed. 2d 667 (1990).

recitation of applicable statutes and Practice Book provisions, the plaintiff added: "Filed pursuant to C.G.S. § 52-592."

Although we appreciate the fact that the plaintiff is a self-represented individual, he misunderstands the inherent nature of § 52-592. As its plain language indicates, § 52-592 pertains to causes of action whose commencement is "time limited by law . . . ." Our Supreme Court has emphasized that § 52-592 "applies only to actions barred by an otherwise applicable *statute of limitations* . . . ." (Emphasis in original.) *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, 246 Conn. 378, 382, 716 A.2d 883 (1998); see also *Aqleh* v. *Cadlerock Joint Venture II, L.P.*, 299 Conn. 84, 93, 10 A.3d 498 (2010) (explaining, as part of statutory construction of § 52-592, that phrase "within the time limited by law" is used "to refer to a statute of limitations"); *Peabody N.E., Inc.* v. *Dept. of Transportation*, 250 Conn. 105, 119, 735 A.2d 782 (1999) ("[t]he plaintiff . . . brought a second action beyond the applicable statute of limitations period, relying on § 52-592"); *Bocchino* v. *Nationwide Mutual Fire Ins. Co.*, supra, 382 ("on several occasions . . . this court and the Appellate Court [have] reaffirmed the limited application" of § 52-592); *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 150, 160, 464 A.2d 18 (1983) (§ 52-592 is instance where "the legislature has specifically delineated . . . [that] the statute of limitations will be tolled"); *Pepitone* v. *Serman*, 69 Conn. App. 614, 619, 794 A.2d 1136 (2002) ("§ 52-592 enables plaintiffs to bring anew causes of actions despite the expiration of the applicable statute of limitations"); *Gillum* v. *Yale University*, 62 Conn. App. 775, 781, 773 A.2d 986 (§ 52-592 "permits plaintiffs to commence those causes of action to which it applies after the tolling of the applicable statute of limitation[s]"), cert. denied, 256 Conn. 929, 776 A.2d 1146 (2001). Because § 52-592 operates to toll a statute of

limitations, a necessary prerequisite to its application is the existence of a statute of limitations that would otherwise bar the cause of action at issue.

In the present case, the plaintiff has not identified any statute of limitations that pertains to petitions for third-party visitation. This case thus resembles *GMAT Legal Title Trust 2014-1, U.S. Bank, National Assn.* v. *Catale*, 221 Conn. App. 90, 300 A.3d 1218, cert. denied, 348 Conn. 928, 305 A.3d 265 (2023), in which we observed: "It is well known that [t]he accidental failure of suit statute applies only to actions barred by an otherwise applicable statute of limitations. . . . Because there is no applicable statute of limitations for a mortgage foreclosure, the accidental failure of suit statute is inapplicable." (Citation omitted; internal quotation marks omitted.) Id., 112 n.11; see also *McKeever* v. *Fiore*, 78 Conn. App. 783, 795, 829 A.2d 846 (2003) ("[Section] 52-592 enables parties to institute actions despite the expiration of the applicable statute of limitations. . . . In this case, § 52-592 was not at issue. The defendants raised no statute of limitations defense in their initial answer, and the court denied their request for leave to amend, which sought to add a statute of limitations defense. . . . The accidental failure of suit statute applies only to actions barred by an otherwise applicable statute of limitations." (Citations omitted; footnote omitted.)).

That logic applies equally here. The defendant has not raised a statute of limitations defense and the plaintiff has failed to identify any statute of limitations that precludes the filing of petitions for third-party visitation after a certain period of time.[10] Accordingly, the court

[10] We note that the plaintiff has not argued that § 46b-115k contains a statute of limitations. To be clear, § 46b-115k is not a statute of limitations that places a time limitation on the filing of petitions for visitation. It is a statute that circumscribes the parameters of the jurisdiction of Connecticut courts over such petitions, in accordance with a legislative scheme adopted in all fifty states to address "inter-jurisdictional issues related to child custody and visitation." (Internal quotation marks omitted.) *In re Iliana M.*,

properly concluded that § 52-592 does not apply in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

supra, 134 Conn. App. 390. In simple terms, § 46b-115k does not specify *when* a petition for visitation can be filed; it specifies *where* such petitions can be filed.