******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

ELIZABETH G. DIGIUSEPPE *v.* VINCENT
J. DIGIUSEPPE
(AC 38679)

Lavine, Sheldon and Keller, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dis-
solved, appealed to this court from the judgment of the trial court
denying the plaintiff's motion for contempt and ordering the defendant
to pay what he owed for the college expenses of his two minor children.
As part of their separation agreement, the parties had agreed that should
certain education accounts for each child become insufficient, the defen-
dant would be solely responsible for the additional college education
expenses. When the defendant failed to pay for the children's college
expenses, the plaintiff filed the motion for contempt. *Held*:

1. This court declined to review the defendant's claim that the trial court
   erred in not finding a latent ambiguity in the college expenses provision
   of the parties' agreement when examining it in conjunction with another
   document that was signed by the parties regarding education support
   orders under statute (§ 46b-56c), the defendant having failed to distinctly
   raise the claim at trial; a careful review of the record demonstrated that
   the defendant did not assert before the trial court any claim concerning
   a latent ambiguity in the agreement created by the other document that
   was executed by the parties, but rather that he based his objection to
   the plaintiff's motion for contempt on two entirely different arguments,
   and this court was under no obligation to consider a claim that was not
   distinctly raised at the trial level.

2. The defendant's claim that the trial court erred in finding that he was
   responsible for all of his children's college expenses was not reviewable;
   although the defendant claimed on appeal that the parties' agreement
   was unenforceable because it contained no reasonable limitations on
   his liability for the college expenses, he did not inquire of the trial court
   as to the exact limits of the college expenses for which he was liable,
   nor did he argue that the provision in the agreement for the payment
   of college expenses was so uncertain and indefinite as to be unenforce-
   able, and, therefore, he failed to preserve the claim by distinctly raising
   it before the trial court.

Argued March 22—officially released July 25, 2017

*Procedural History*

Action for the dissolution of a marriage, and for other
relief, brought to the Superior Court in the judicial dis-
trict of Litchfield, where the court, *Ginocchio, J.*, ren-
dered judgment dissolving the marriage and granting
certain relief in accordance with the parties' separation
agreement; thereafter, the court, *Hon. Elizabeth A. Gal-
lagher*, judge trial referee, denied the plaintiff's motion
for contempt and issued certain orders, and the defen-
dant appealed to this court. *Affirmed.*

*Steven H. Levy*, for the appellant (defendant).

*Campbell D. Barrett*, with whom were *Johanna S.
Katz* and, on the brief, *Jon T. Kukucka*, for the appel-
lee (plaintiff).

*Opinion*

KELLER, J. The defendant, Vincent J. DiGiuseppe, appeals from the judgment of the trial court rendered when it denied a postdissolution motion for contempt filed by the plaintiff, Elizabeth G. DiGiuseppe, and ordered him to pay what he owed for his children's college expenses. The issue on appeal concerns the extent of the defendant's obligation to pay for the college expenses of the parties' two children beyond what is covered by Connecticut Higher Education Trust (CHET) accounts that the parties had established for each of them. The defendant claims that the court erred in (1) not finding a latent ambiguity in the provision of the parties' separation agreement (agreement) regarding college expenses when examining it in conjunction with another document signed by the parties entitled "Education Support Orders [General Statutes § 46b-56c]" (form), which would render the agreement unenforceable, and (2) its determination that the defendant is responsible for 100 percent of college expenses of the two children without limitation. We conclude that the defendant failed to preserve either of his claims before the trial court, and, therefore, we decline to review them.

The following facts, as found by the court in its written memorandum of decision, and procedural history are relevant to this appeal: "The parties were divorced on June 25, 2013. Their [agreement] contained a provision for the payment of the educational expenses of their two children, who are currently [nineteen] and [eighteen] years old. [The plaintiff] has moved for contempt based on [the defendant's] failure to pay the children's college expenses. . . .

"The parties do not communicate. When [the plaintiff] learned that [the defendant] was refusing to pay the children's college expenses, [the plaintiff] attempted to contact [the defendant], but he refused to communicate with her.

"At the time of the hearing on the motion for contempt, the parties' son was entering his second year at Bentley College, and their daughter was hoping to begin her freshman year at Syracuse University. The provisions for the postmajority educational expenses are set forth in paragraph 8 of the parties' [separation] agreement.

"Paragraph 8.1 of the parties' separation agreement provides: 'The parties established CHET accounts for the benefit of each of their children. These CHET accounts shall be used for the college education of both children. Should the CHET accounts be insufficient to educate both of the parties' children, the [defendant] shall be solely responsible for the additional college education expenses for the benefit of the parties' children.'

"Paragraph 8.2 provides: 'In the event there is a balance in the CHET accounts after the children have completed their college educations, the parties may divide any remaining balance equally. However, in the event the [defendant] contributes any additional funds to these accounts after the date of dissolution, the [defendant] shall be entitled to a refund of these contributions if all of the CHET account funds are not used for the college education of the parties' children.'

"The parties had engaged a mediator, Attorney Jeannine Talbot, to assist them in settling the issues arising from the impending dissolution of their marriage. . . . As she does in every mediation where the parties have a child under the age of [twenty-three], Attorney Talbot advised the parties concerning the provisions of . . . General Statutes [§] 46b-56c.[1] The language that the parties chose to put in their agreement did not reference the statute.

"Since Attorney Talbot did not, as mediator, represent either party, she advised them that they had an opportunity to take their proposed agreement to their own attorney in order to have it reviewed. There is no evidence that [the defendant] engaged an attorney for that purpose. [The plaintiff] did take the proposed agreement to her own attorney to review. The proposed agreement reviewed by [the plaintiff's] attorney did not include any reference to . . . [§] 46b-56c; nor did it include any document other than the proposed agreement.

"A document which was produced and distributed by the Litchfield Superior Court clerk's office concerning educational support orders pursuant to . . . [§] 46b-56c was given to the parties for their signature by Attorney Talbot on June 4, 2013. The box requesting the court to enter an educational support order was checked. Attorney Talbot told the parties that, by signing the form, they were asking the court to enter an educational support order.

"[The plaintiff] did not remember being told anything about the statute in connection with the agreement about educational expenses. She does not recall [the] University of Connecticut being mentioned at all. She did not recall any discussion about the terms of the statute. . . .

"In entering judgment after the dissolution hearing, the court, *Ginocchio, J.*, did not enter an educational support order pursuant to . . . [§] 46b-56c. Rather, finding the agreement to be fair and equitable to both sides, the court incorporated the entire agreement of the parties into its judgment dissolving the parties' marriage." (Footnote added.)

The court continued: "It is further clear that neither party requested such an order, nor did the court at the time of dissolution make the predicate findings neces-

sary to issue such an order. . . .[2] Although the mediator had the parties sign the form provided by the Litchfield Superior Court clerk's office, the credible evidence demonstrates that the parties did not request it; nor did the court enter an order in accordance with or sign the form." (Footnote added.)

The court found that the language of paragraph 8 of the parties' agreement is clear and unambiguous, as it contains no limiting language and no language referencing § 46b-56c. To the contrary, the court found that the language of paragraph 8.2 clearly states that the CHET accounts will be used for the children's educational expenses and further anticipates that more funds might be required of the defendant. The court concluded that paragraph 8 clearly and unequivocally imposes on the defendant the sole obligation to pay for the educational expenses of the parties' children and did not grant him sole decision-making authority with respect to college selection or allow him to stop paying tuition based on lack of communication between him and his son.

In ruling on the plaintiff's motion for contempt, the court, "[b]ased on the somewhat adequate evidence [that the defendant] offered to explain his failure to honor the order of the court," declined to hold the defendant in contempt, but concluded that "there is no reason for any refusal or delay on the part of the defendant in honoring his contractual obligations. Accordingly, [the defendant] is ordered to pay whatever amounts he owes for his children's college expenses within ten days of notice of this decision."

Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that the court erred in not finding a latent ambiguity in the provision of the parties' agreement regarding college expenses when examining it in conjunction with the form signed by the parties, which would render the agreement unenforceable.[3] The plaintiff argues that we should decline to review this claim because it is unpreserved. After a thorough and independent review of the record, we agree with the plaintiff.

In the present case, the defendant's claim of a latent ambiguity in the parties' agreement was not distinctly raised at trial. In the defendant's principal brief and reply brief, although he refers to the admission of extrinsic evidence that may have supported his newly raised theory, notably, his and Talbot's testimony and the form, he fails to identify where in the transcript of the contempt proceeding he requested that the court apply this particular principle of contract law and, more specifically, the manner in which he asked the court to determine that a latent ambiguity in the agreement existed.

Instead, the defendant based his objection to the plaintiff's motion for contempt arguments on two entirely different arguments. First, he argued that, at the time he entered into the parties' agreement, he understood that § 46b-56c governed his college expense obligation. He claimed that his understanding of the agreement was due to representations made to him by Talbot during the parties' mediation and to the submission of the signed form at the time of the judgment of dissolution, which Talbot indicated would limit his college expense obligations to those that may be imposed under § 46b-56c. He further argued that the form was incorporated into the judgment by agreement.[4]

Second, and primarily, the defendant argued that as a matter of law, § 46b-56c governed his college expense obligation because he did not specifically waive its provisions.

That these were the defendant's only claims raised before the trial court is indisputable upon review of the following excerpts from the transcript of the contempt hearing. The court, in addressing the plaintiff's counsel, stated:

"The Court: [The defendant's] position is he's—the only reason he—he signed that because he thought he was limited, the tuition was limited to whatever the tuition at [the University of Connecticut] was.

"And—and his position further is, I believe, that any agreement made in this state about the college education is subject to [§ 46b-56c], unless it is explicitly waived. And therefore, since it was not explicitly waived, then he doesn't have to pay the entire tuition for Syracuse. He only has to pay it up to the amount that he would have to pay at [the University of Connecticut]. That's his position. . . . I understand it's not relevant to your position, but it may be relevant to his position.

"[The Defendant's Counsel]: And you very succinctly reiterated my position, Your Honor."

A careful review of the record demonstrates that the defendant did not assert before the trial court a claim that the form executed by the parties and submitted to the court at the time of judgment created a latent ambiguity between the agreement and the court form, and, therefore, the court could not enforce section 8 of the agreement.

It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. See Practice Book § 60-5; see also *Burnham* v. *Karl & Gelb, P.C.*, 252 Conn. 153, 170–71, 745 A.2d 178 (2000). "The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked." (Emphasis

in original; internal quotation marks omitted.) *State* v. *Colon*, 82 Conn. App. 658, 659, 847 A.2d 315, cert. denied, 269 Conn. 915, 852 A.2d 745 (2004). "We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 633 n.2, 148 A.3d 1052 (2016). "We will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of [her] or issues never clearly presented to [her]." (Internal quotation marks omitted.) *Burnham* v. *Karl & Gelb*, *P.C.*, supra, 171. Therefore, we decline to review the defendant's first claim because it was not distinctly raised at the contempt hearing.

## II

The defendant's second claim is that the court erred in its determination that the defendant is responsible for 100 percent of college expenses of the two children without limitation. The defendant notes that the court, despite his request for an articulation pursuant to Practice Book § 66-5, failed to determine the specific college expenses that he is responsible to pay. The court denied the motion for articulation, stating: "The court's memorandum of decision speaks for itself. The issue before the court was whether the parties' agreement and the judgment of the court mandated that the financial responsibility of the defendant for the college education of the parties' children was limited by . . . [§] 46b-56c."[5]

The defendant now argues on appeal that if § 46b-56c, with its limits on the nature of college expenditures that can be ordered, is inapplicable because the court correctly determined that the parties arrived at their own educational support order, paragraph 8 of the agreement nevertheless is unenforceable because it contains no reasonable limitations on the defendant's liability and, under well established contract law, a contract must be definite and certain as to its terms and requirements. See *Bender* v. *Bender*, 292 Conn. 696, 728, 975 A.2d 636 (2009).

The plaintiff argues that, like the claim we addressed in part I of this opinion, this claim was not raised before the court and is accordingly not preserved for appeal. Our review of the record reflects that the defendant did not make any inquiry of the court as to the exact limits of the college expenses for which he was liable, nor did he argue that the provision in the agreement for the payment of college expenses was so uncertain and indefinite as to be unenforceable. The only issue before the trial court was whether his failure to pay tuition, room, and board for the parties' children was justified.[6] Thus, we agree with the plaintiff and decline to reach the merits of this claim.

As we noted previously in part I of this opinion, it is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. The court noted in its denial of the defendant's motion for articulation that this particular issue was not presented during the contempt hearing, and a thorough and independent review of the record reveals that the defendant never sought a precise designation of all other college expenses for which he might be liable in the future.[7] The plaintiff sought only to have the defendant held in contempt for failing to provide payment for tuition, room, and board related to the two undergraduate colleges in which the children, ages eighteen and nineteen, had enrolled. The defendant did not dispute that tuition, room, and board may not be reasonably encompassed by the term "college expenses," in the parties' agreement. Accordingly, we also decline to consider the defendant's second claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 46b-56c provides in relevant part: "(a) For purposes of this section, an educational support order is an order entered by a court requiring a parent to provide support for a child or children to attend for up to a total of four full academic years an institution of higher education . . . for the purpose of attaining a bachelor's or other undergraduate degree . . . . An educational support order may be entered with respect to any child who has not attained twenty-three years of age and shall terminate not later than the date on which the child attains twenty-three years of age.

"(b) (1) On motion or petition of a parent, the court may enter an educational support order at the time of entry of a decree of dissolution . . . and no educational support order may be entered thereafter unless the decree explicitly provides that a motion or petition for an educational support order may be filed by either parent at a subsequent date. If no educational support order is entered at the time of entry of a decree of dissolution . . . and the parents have a child who has not attained twenty-three years of age, the court shall inform the parents that no educational support order may be entered thereafter. The court may accept a parent's waiver of the right to file a motion or petition for an educational support order upon a finding that the parent fully understands the consequences of such waiver. . . .

"(c) The court may not enter an educational support order pursuant to this section unless the court finds as a matter of fact that it is more likely than not that the parents would have provided support to the child for higher education . . . if the family were intact. . . .

"(f) The educational support order may include support for any necessary educational expense, including room, board, dues, tuition, fees, registration and application costs, but such expenses shall not be more than the amount charged by The University of Connecticut for a full-time in-state student at the time the child for whom educational support is being ordered matriculates, except this limit may be exceeded by agreement of the parents. An educational support order may also include the cost of books and medical insurance for such child."

[2] See General Statutes § 46b-56c (c), set forth in footnote 1 of this opinion.

[3] Upon our examination of the form utilized by the Litchfield Superior Court, we disagree that it is intended to constitute an agreement to an educational support order subject to all the provisions and limitations of § 46b-56c at the time of a judgment of dissolution, as the defendant claims. The form is an advisement of rights and waiver form intended to comply with the provisions of § 46b-56 (b) (1), which mandates that the court assure that the parties seeking a dissolution understand the consequences of not requesting an educational support order be issued at the time of the dissolution. The form notifies divorcing parties that if they wish to request the inclusion of an educational support order as part of their divorce decree, they must so notify the court at the time of the dissolution. It allows for the parties to advise the court that they are waiving their right to request an educational support order, requesting the court to retain jurisdiction to

consider the issue at a future time, or asking the court to enter an educational support order on that day. It is insufficient to inform the court as to the precise nature of the educational support order the parties desire, as even a statutory order may vary in its terms. See General Statutes § 46b-56c (f) and (g).

The box the parties checked reads: "I ask the court to enter an Educational Support Order today." Neither the court nor the clerk signed it. The judgment file incorporated the parties' agreement and made its provisions an order of the court, which encompassed the parties' agreement as to college expenses. A box on the judgment file reflecting any further order regarding educational support is not checked. We further note that the preamble to the parties' agreement provides that the execution of the agreement reflected their "intention that henceforth there shall be as between them only such rights and obligations as are specifically provided in this Agreement." In section 11, they further agreed that their agreement "contains the entire understanding of the parties. There are no representations, promises, warranties, covenants or undertakings other than those expressly set forth herein."

Moreover, the educational support order statute contemplates that such orders may be entered pursuant to any other provision of the general statutes authorizing the court to make an order of support for a child. See § 46b-56c (b) (4). Indeed, pursuant to General Statutes § 46b-66 (a), which governs orders of postmajority support, the parties to a dissolution may enter into any written agreement that "provides for the care, *education*, maintenance or support of a child beyond the age of eighteen . . . ." (Emphasis added.) See also *Hirtle* v. *Hirtle*, 217 Conn. 394, 399–400, 586 A.2d 578 (1991).

[4] The court noted, however, that "[a]s [the defendant] has pointed out, unilateral mistake is not a defense to a breach of contract claim." The court found that the parties did not request the form nor did the dissolution court enter an order in accordance with any representations made on the form or sign the form, nor was the form attached to the agreement or incorporated into the judgment. The judge who presided over the dissolution did not check the box contained in the judgment form that provides for the entry of an educational support order; rather, the court found only that the parties' agreement was fair and equitable and incorporated it into the judgment of dissolution. Furthermore, in the canvasses conducted of both parties by Talbot during the dissolution hearing, there is no reference to the court form, and she asked each of them only if they wished to have their agreement incorporated into the judgment.

[5] This court granted the defendant's motion for review of the trial court's denial of the motion for articulation filed on June 8, 2016, but denied the relief he requested. "[A]n articulation elaborates upon, or explains, a matter that the trial court decided." *State* v. *Walker*, 319 Conn. 668, 680, 126 A.3d 1087 (2015). The rule regarding motions for articulation cannot be used to "import into the record matters that were never presented to the trial court . . . ." (Citations omitted.) W. Horton & K. Bartschi, Connecticut Practice Series: Connecticut Rules of Appellate Procedure (2016–2017 Ed.) § 66-5, comment 5, p. 190; see also *State* v. *Brunetti*, 279 Conn. 39, 55 n.27, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

[6] The defendant asserts that there is an expansive list of possible college related expenses for which he could be held responsible. In his brief, the defendant poses a number of "what if" questions with respect to possible future requests for a variety of arguably college related expenses, e.g., first-class airfare, study abroad, and graduate school, which were not the subject of the motion for contempt. "[C]ourts are called upon to determine existing controversies, and thus may not be used as a vehicle to obtain advisory judicial opinions on points of law. . . ." (Internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 374, 944 A.2d 276 (2008).

[7] We note that, following Attorney Talbot's canvass of the defendant during the dissolution proceedings, the court, *Ginocchio*, *J.*, and the defendant engaged in the following colloquy:

"The Court: All right, I'm just—my only question is you have assets here, you have a substantial salary, you know the situation better than anyone, but you didn't take advantage of an opportunity to speak to a lawyer about this?

"The Witness: You know, the main purpose of what I went through was for my children, and that's what I feel based upon what our lifestyle has been, my children need that.

"The Court: All right, as long as you know if you start speaking to someone else or you do talk to a lawyer and someone might tell you perhaps you were overly generous or something to that extent, you will not be able to come back here and say, oh, I made a mistake or I probably should have been a little more careful about how I made the decisions. . . . I will give

you the opportunity today if you wanted to speak with a lawyer, I will give you that opportunity. But if you're okay with it.

"The Witness: I'm fine with it."