******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# MARIBEL MORALES *v.* ROBERT F. MEEHAN
# (AC 47967)

Elgo, Clark and Westbrook, Js.

## *Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed from the trial court's judgment granting the plaintiff's postjudgment motions for contempt. The defendant claimed, inter alia, that the court violated his right to procedural fairness by denying him the opportunity to testify at the hearing on one of the plaintiff's motions. *Held*:

The defendant's claim that the trial court violated his right to procedural fairness was without merit, as the record indicated that the defendant agreed to have the court decide the plaintiff's postjudgment motion for contempt on the basis of the record of a previous hearing, and there was no indication in the record that the defendant ever objected to that course of action or requested an opportunity to testify further or to present additional evidence in connection with that motion.

This court declined to review the merits of the defendant's claim that the trial court erred in finding that he had been difficult and uncooperative with professionals involved with the family, as the defendant failed to provide a transcript of the hearing on which the court based its findings, thus, the record was inadequate for review.

This court declined to review the defendant's unpreserved claim that his right to procedural due process was violated by the plaintiff's failure to disclose certain materials in a timely manner, as he did not raise the issue before the trial court.

The trial court properly granted the plaintiff's motion for contempt regarding the marital property dissolution order, as the evidence in the record supported the court's conclusion that the plaintiff established by clear and convincing evidence that the defendant wilfully violated the court's order.

This court declined to review the defendant's claim that the trial court improperly found him in contempt when the record demonstrated that the plaintiff failed to exercise a "self-executing remedy," as the defendant failed to adequately brief this claim.

The defendant's claim that the trial court improperly modified the property distribution orders by appointing a committee to sell the marital residence after finding the defendant in contempt was unavailing, as the court's order of relief was a proper exercise of its remedial contempt authority to effectuate the terms of the judgment of dissolution.

Argued February 19—officially released June 9, 2026

## *Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial dis-

trict of Stamford-Norwalk, where the defendant filed a cross complaint; thereafter, the case was tried to the court, *Hon. Gerald I. Adelman*, judge trial referee; judgment dissolving the parties' marriage and issuing certain orders; subsequently, the court, *Tindill, J.*, rendered judgment granting the plaintiff's postjudgment motions for contempt, from which the defendant appealed to this court. *Affirmed*.

*Robert F. Meehan*, self-represented, the appellant (defendant).

*Opinion*

ELGO, J.  The self-represented defendant, Robert F. Meehan,[1] appeals from the judgment of the trial court granting two postjudgment motions for contempt filed by the plaintiff, Maribel Morales.[2]  On appeal, the defendant raises a bevy of claims regarding the court's decision to find him in contempt of the court's custody and parenting orders and the court's property distribution orders regarding the marital residence.  We affirm the judgment of the trial court.

The record discloses the following undisputed facts. The parties married in 2003, and one child was born of the marriage.  Following the subsequent breakdown of the marriage, the plaintiff commenced a dissolution action in 2016.  After a period of attempted reconciliation, the defendant filed an answer and a cross complaint in 2018, and a six day trial followed.  On February 11, 2020, the court, *Hon. Gerald I. Adelman*, judge trial referee, rendered judgment dissolving the parties' marriage.

As part of the judgment of dissolution, the court made numerous factual findings and entered detailed custody

---

[1]The defendant was represented by legal counsel before the trial court and appears in a self-represented capacity in this appeal.

[2]The plaintiff appeared, but has not participated, in this appeal. Because she did not file an appellate brief, we ordered that the appeal shall be considered on the basis of the defendant's brief and appendix, the record, and the defendant's oral argument.  See, e.g., *Ammar I.* v. *Evelyn W.*, 227 Conn. App. 827, 830 n.2, 323 A.3d 1111 (2024).

and parenting orders regarding the minor child. The court also entered orders regarding the parties' marital residence at 50 Havemeyer Lane in Old Greenwich.[3] Specifically, it ordered the plaintiff to quitclaim her interest in the marital residence to the defendant and ordered the defendant to execute a mortgage note and deed in favor of the plaintiff in the amount of $183,000 to be paid on or before March 1, 2023 (plaintiff's mortgage). The court also ordered that the defendant "shall be solely liable for all costs and expenses associated with the ownership and possession of the [marital residence] . . . ." In addition, the court ordered that, if the defendant failed to pay the plaintiff's mortgage by March 1, 2023, the marital residence would be sold pursuant to "an aggressive marketing plan, designed to achieve a sale as quickly as possible . . . ." It is undisputed that a quitclaim deed from the plaintiff and a mortgage deed and promissory note from the defendant subsequently were filed on the Greenwich land records.[4]

On March 1, 2023, the plaintiff filed a postjudgment motion for contempt, in which she alleged, inter alia, that the defendant had failed to pay the plaintiff's mortgage in violation of the court's property distribution orders. On November 13, 2023, the plaintiff filed a motion for the appointment of a guardian ad litem for the parties' minor child. The court granted that motion and, with the agreement of the parties, appointed Attorney Paul Tusch as guardian ad litem. On November 15, 2023, the plaintiff filed another postjudgment motion for contempt, in which she alleged that the defendant had failed to comply with the court's custody and parenting orders.

---

[3]In its memorandum of decision, the court found that the marital residence had a fair market value of $855,000 and was encumbered by a $461,095 mortgage, "leaving an estimated equity of $393,905 . . . ."

[4]The promissory note stated in relevant part: "For value received the [defendant] does promise to pay to the order of [the plaintiff] the principal sum of [$183,000] on or before March 1, 2023. The principal sum shall bear no interest until March 1, 2023, but if unpaid as of that date shall commence and continue to earn interest at the rate of ten percent (10%) per annum until paid in full. . . ."

The court held separate evidentiary hearings on those contempt motions. It thereafter granted both contempt motions, and this appeal followed.

Before considering the specific claims advanced by the defendant, we note certain principles relevant to this appeal. "[C]ivil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . To constitute contempt, it is not enough that a party has merely violated a court order; the violation must be wilful. . . . It is the burden of the party seeking an order of contempt to prove, by clear and convincing evidence, both a clear and unambiguous directive to the alleged contemnor and the alleged contemnor's wilful noncompliance with that directive. . . . The question of whether the underlying order is clear and unambiguous is a legal inquiry subject to de novo review. . . . If we answer that question affirmatively, we then review the trial court's determination that the violation was wilful under the abuse of discretion standard." (Citations omitted; internal quotation marks omitted.) *Puff* v. *Puff*, 334 Conn. 341, 364–66, 222 A.3d 493 (2020); see also *Ramin* v. *Ramin*, 281 Conn. 324, 336, 915 A.2d 790 (2007) ("the abuse of discretion standard applies to a trial court's decision on a motion for contempt").

I

We first address the defendant's claims pertaining to the court's decision to grant the plaintiff's November 15, 2023 motion for contempt. The defendant contends that (1) the court violated his right to "procedural fairness" by denying him the opportunity to testify at the contempt hearing on that motion, (2) the court erroneously found that the defendant had been difficult and uncooperative with professionals, and (3) his right to procedural due process was violated by the plaintiff's failure to disclose certain transcripts and audio recordings in a timely manner.

The following additional facts are relevant to those claims. On December 21, 2023, the court, *Hon. Michael E. Shay*, judge trial referee, held a hearing on various postdissolution motions filed by the parties. Although the plaintiff's motions for contempt were mentioned at that hearing, their substance was not discussed. As that hearing concluded, the court observed that the "custody related" issues raised in the plaintiff's November 15, 2023 motion for contempt were "the ones that need to be addressed. They need to be addressed first. They will be the ones that are going to be addressed first [at a hearing] in January." The court thereafter held a hearing on that contempt motion and other unrelated motions on January 18, 2024.

This court takes judicial notice of the undisputed fact that Judge Shay's term as a judge trial referee in this state concluded in February 2024. See, e.g., *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 84–85 n.18, 700 A.2d 655 (1997) (taking judicial notice of undisputed events that were "capable of ready and unquestionable demonstration"). On February 28, 2024, the court, *Heller, J.*, held a hearing with the parties and the guardian ad litem. At the outset, the court acknowledged that Judge Shay was "no longer on the bench." The court then indicated that it "unfortunately" would have to order a mistrial on the motions that had been the subject of the January 18, 2024 hearing. The court further noted that "[t]here is a statute that [permits] the court, if a judge retires, to pick it up and finish" a pending matter. In response, the plaintiff's attorney stated in relevant part: "[At the January 18, 2024 hearing], we had started with [the plaintiff's November 15, 2023 motion for contempt] and . . . I had concluded my presentation of our motion. . . . [A]ll the testimony that I intended to elicit [on the plaintiff's November 15, 2023 motion for contempt] has been elicited. All the exhibits I wanted to be presented have been admitted into evidence. I would have no objection to whatever successor judge takes over the balance of the case that they rely on the transcript and the exhibits; again, this is [the November 15, 2023

motion for contempt].  If [the defendant] chooses not to testify, that's fine.  It could really be decided on the papers.  If he decides to testify, that judge can hear that and then make that ruling. . . .  [W]e spent I think virtually all day on [the November 15, 2023 motion for contempt] and to have to go through that again, again I am willing to have [the] successor judge rely on the transcript and the exhibits . . . and then complete the rest of our motions with [the] successor judge."  The court then stated: "[T]hat's helpful and as I said there is a statute that does provide for a successor judge to pick up when a hearing is concluded.  Here we may still be in the middle of a hearing but if there is no objection obviously the judge could take that. . . .  So, what I am going to do [is] I am going to reserve on declaring a mistrial on [the plaintiff's November 15, 2023 motion for contempt]."[5]

By order dated February 28, 2024, the court declared a mistrial on certain motions heard at the January 18, 2024 hearing before Judge Shay.  With respect to the plaintiff's November 15, 2023 motion for contempt, the court deferred "the entry of a mistrial . . . until a successor judge has determined whether to proceed on the existing record and conclude the hearing pursuant to General Statutes § 51-183f."

On April 10, 2024, the court, *Tindill, J.*, held a conference with the parties.  In an order issued later that day, the court stated that "[t]he parties agree that the court will review the record of the [January 18, 2024 hearing] and rule on the plaintiff's [November 15, 2023] postjudgment motion for contempt."  The court further indicated that a hearing on the other pending motions, including the plaintiff's March 1, 2023 motion for contempt, was scheduled for late June.

---

[5]The defendant raised no objection at that time.  The transcript of the February 28, 2024 hearing indicates that the court specifically asked the defendant's counsel if he wanted to be heard on that issue and counsel responded: "No, Your Honor, other than, you know, unfortunately these things have been ticking around a long time and as soon as we could get [before the successor judge] that would be greatly appreciated."

On June 20, 2024, the court issued an order granting the plaintiff's November 15, 2023 motion for contempt. In that order, the court first noted that "[t]he parties and their counsel appeared before [Judge Shay] on January 18, 2024, to prosecute the plaintiff's [November 15, 2023] postjudgment motion for contempt. Both parties testified, as did the guardian ad litem . . . ." The court explained that its "orders and findings" were based on, inter alia, the court's "review of the record of the January 18, 2024 proceedings" and "[t]he parties' consent to the court's review and issuance of a ruling," in accordance with the court's April 10, 2024 order. The court then proceeded to find that the custody and parenting orders in question were clear and unambiguous and that the defendant had wilfully violated those orders by "with[holding] the child from the plaintiff without good cause from October 14, 2023, to December 14, 2023," by keeping "information from the plaintiff and ma[king] unilateral decisions regarding the minor child in the fall and winter of 2023," and by "undermin[ing] the plaintiff as the child's parent." In that order, the court also found that "[t]he defendant is difficult—he does not cooperate with professionals involved with the family." Although the record before us indicates that the defendant has filed multiple postjudgment motions seeking reargument, reconsideration, and articulation with the trial court regarding various rulings, he did not file any such motion with respect to its June 20, 2024 ruling on the plaintiff's November 15, 2023 motion for contempt.

## A

On appeal, the defendant claims that the court violated his right to "procedural fairness" by denying him the opportunity to testify at the contempt hearing and "fully present [his] evidence." The record belies that contention.

The record indicates that, in February 2024, the court held a hearing following Judge Shay's retirement from

the bench. At that hearing, the plaintiff's counsel averred that the plaintiff had finished presenting its evidence on the November 15, 2023 motion for contempt at the January 18, 2024 hearing before Judge Shay and that, "at the end of the day [the defendant's] counsel said [he] will need to confer with [the defendant] as to whether or not he would want to testify" as part of his case. The court then stated that it would reserve judgment on whether to grant a mistrial on that motion for contempt and would allow the parties an opportunity to reach an "agreement" as to how to proceed on that motion before a successor judge. At that time, the defendant raised no objection. See footnote 5 of this opinion.

The record also indicates that the successor judge subsequently held a conference with the parties on April 10, 2024. After that conference concluded, the court issued an order in which it stated in relevant part: "The parties agree that the court will review the record of the [January 18, 2024 hearing] and rule on the plaintiff's [November 15, 2023] postjudgment motion for contempt."

On appeal, the defendant neither acknowledges that order of the court nor challenges its substance in any manner. The court's April 10, 2024 order speaks for itself and indicates that the defendant agreed to have the court decide the plaintiff's November 15, 2023 postjudgment motion for contempt on the basis of the record of the January 18, 2024 hearing. Moreover, there is no indication in the record that the defendant ever objected to that course of action or requested an opportunity to testify further or present additional evidence in connection with that motion for contempt. In light of the foregoing, we conclude that the defendant's procedural fairness claim is without merit.

## B

The defendant also claims that, in its June 20, 2024 order granting the plaintiff's motion for contempt, the court erroneously found that he had been "difficult" and

uncooperative with "professionals involved with the family." We decline to review the merits of that claim.

It is axiomatic that "[t]he trial court's findings [of fact] are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Steller* v. *Steller*, 181 Conn. App. 581, 588, 187 A.3d 1184 (2018); see also *Jacob-Dick* v. *Dick*, 231 Conn. App. 404, 412, 333 A.3d 210 (2025) ("[w]e review the factual findings that underlie a court's contempt determination pursuant to the clearly erroneous standard").

In its June 20, 2024 order granting the plaintiff's motion for contempt, the court expressly stated that its factual findings were predicated on, inter alia, its "review of the record" of the January 18, 2024 hearing before Judge Shay. Although the defendant has furnished this court with transcripts of other trial court proceedings, consistent with his obligation as an appellant; see Practice Book § 63-8 (a); the defendant has not provided the transcript of the January 18, 2024 hearing. Moreover, that transcript is not contained in the record before us. We therefore are unable to review the record of the January 18, 2024 hearing to determine whether the factual findings in question are clearly erroneous. See, e.g., *Taylor* v. *American Thread Co.*, 200 Conn. 108, 112, 509 A.2d 512 (1986) ("[w]ithout the appropriate transcripts to provide us a record of what transpired at trial, we cannot . . . find error in the judgment of the trial court"); *Buggy* v. *Buggy*, 141 Conn. App. 733, 737, 64 A.3d 778 (2013) ("[w]here a transcript is required for review of a party's claims, this court cannot proceed without one"). Because the record is inadequate to review the defendant's challenge to the factual findings

contained in the court's June 20, 2024 order, we decline to review that claim.

## C

The defendant also claims that his right to procedural due process was violated by the plaintiff's failure to disclose certain materials in a timely manner. Specifically, he claims that the plaintiff "submitted transcripts and audio recordings from a January 18, 2024 hearing to her attorney ex parte" that allegedly were not furnished to the defendant "until June 25, 2024, creating a due process violation." To the extent that the defendant articulates a cognizable claim, we nonetheless conclude that it is unpreserved.

Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. See Practice Book § 5-2 ("[a]ny party intending to raise any question of law which may be the subject of an appeal must . . . state the question distinctly to the judicial authority"); Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). For that reason, we repeatedly have held that "we will not decide an issue that was not presented to the trial court. To review claims . . . not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Martin*, 110 Conn. App. 171, 180, 954 A.2d 256 (2008), appeal dismissed, 295 Conn. 192, 989 A.2d 1072 (2010); see also *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013) ("the sina qua non of preservation is fair notice to the trial court"); *State* v. *Favoccia*, 119 Conn. App. 1, 14, 986 A.2d 1081 (2010) ("[i]t is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal"), aff'd, 306 Conn. 770, 51 A.3d 1002 (2012).

The defendant has not identified, nor can we uncover, anywhere in the record that he raised his procedural due process claim before the trial court. That claim,

therefore, is unpreserved. Moreover, the defendant has not sought review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), and cannot prevail under its first prong. The defendant has not provided this court with an adequate record to review such a claim, as the "transcripts and audio recordings" he references in his appellate brief are not in the record before us and he has not identified anywhere in the record that the issue of his access to those materials is discussed. The defendant, therefore, is not entitled to *Golding* review. See *State* v. *Elson*, 311 Conn. 726, 755, 91 A.3d 862 (2014). Accordingly, we decline to review that unpreserved constitutional claim.[6]

II

We next consider the defendant's claims regarding the court's decision to grant the plaintiff's March 1, 2023 motion for contempt. The defendant claims that the court improperly (1) concluded that he wilfully violated the property distribution orders regarding the marital residence, (2) found him in contempt when the record demonstrates that the plaintiff failed "to exercise a self-executing remedy," and (3) modified the property distribution orders by ordering a committee to sell the property. We do not agree.

---

[6] We likewise decline to review the merits of two nonconstitutional claims that concern a report allegedly prepared by the Department of Children and Families. In his appellate brief, the defendant claims that "the guardian ad litem failed to investigate or present a 137 page Department of Children and Families report documenting allegations of violence by the plaintiff towards the [minor] child," which allegedly "raises concerns about the adequacy of the [guardian ad litem's] representation." The defendant relatedly claims that the trial court failed to consider that report in ruling on the plaintiff's November 15, 2023 postjudgment motion for contempt. The record before us indicates that the defendant did not distinctly raise either of those claims before the trial court. We therefore decline to address them. See, e.g., *Torres* v. *Waterbury*, 249 Conn. 110, 134, 733 A.2d 817 (1999) (declining to review claim that "was not distinctly raised or decided at the trial level"); *DiGiuseppe* v. *DiGiuseppe*, 174 Conn. App. 855, 864, 167 A.3d 411 (2017) (declining to review claim "because it was not distinctly raised at the contempt hearing").

## A

In its August 14, 2024 order on the plaintiff's March 1, 2023 motion for contempt, the court found that the defendant wilfully violated the dissolution order that required him to pay the plaintiff's mortgage on or before March 1, 2023. On appeal, the defendant challenges the propriety of that determination.[7]

In its order, the court specifically found that "[t]he defendant did not pay the [plaintiff's mortgage] on or before March 1, 2023." That factual finding is not contested by the defendant on appeal. The court further found that the plaintiff had met her burden of establishing, by clear and convincing evidence, that the defendant wilfully violated the dissolution order that required such payment. At the hearing on the plaintiff's March 1, 2023 motion for contempt, the defendant acknowledged that the court's dissolution orders required him to pay "the sum of $183,000" to the plaintiff on or before March 1, 2023, in satisfaction of the plaintiff's mortgage. The defendant also confirmed that he had three years to pay off the plaintiff's mortgage but did not do so. The defendant offered no explanation for his failure to comply with that property distribution order.

The defendant likewise confirmed that no documentary evidence existed to indicate that he attempted to refinance the existing mortgage on the property in order to fulfill his obligation to pay the plaintiff's mortgage. The court also was presented with evidence that, although the defendant listed the marital residence for sale in early 2023, he subsequently cancelled that listing. In addition, the plaintiff adduced evidence at the hearing demonstrating that the defendant repeatedly told the minor child, both verbally and through text messages, that he did not want to move out of the marital residence and was going to do everything he could to stay in that

---

[7] The defendant does not challenge the propriety of the court's determination that the dissolution order requiring him to pay the plaintiff's mortgage by March 1, 2023, "is a clear and unambiguous court order."

residence. Later in his testimony, the following colloquy transpired:

"The Court: So, as you sit here today, you have no intention of selling the home because you'd like to try to keep [the minor child] in it?

"The Defendant: Yes.

"The Court: Okay. And you are not disputing the fact that that is contrary to the court order?

"The Defendant: I'm not. . . .

"The Court: It sounds like come hell or high water what you would like to do is keep your daughter in that home, period, end of story.

"The Defendant: Until she finishes school.

"The Court: Got it. Okay."

That testimony supports the court's finding that the defendant "did not make a good faith effort to sell" the marital residence.

In light of the foregoing, we conclude that the evidence in the record before us substantiates the court's conclusion that the plaintiff established by clear and convincing evidence that the defendant wilfully violated the court's dissolution order requiring him to pay the plaintiff's mortgage on or before March 1, 2023.

B

The defendant also claims that the court improperly found him in contempt when the record demonstrates that the plaintiff failed to exercise a "self-executing remedy" following his failure to pay the plaintiff's mortgage by March 1, 2023. More specifically, he maintains that "a party cannot be held in contempt when their alleged failure to act stems from the other party's failure to exercise a self-executing remedy."

The defendant has failed to adequately brief that bald assertion. His briefing on this claim consists of two

sentences[8] and a citation to a single case; *Maguire* v. *Maguire*, 222 Conn. 32, 608 A.2d 79 (1992); that does not involve a contempt proceeding and does not contain any reference to, or discussion of, "self-executing" remedies. As our Supreme Court has observed, the appellate courts of this state "are not required to review issues that have been improperly presented . . . through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *Cohen* v. *Rossi*, 346 Conn. 642, 689, 295 A.3d 75 (2023); see also *Russell* v. *Russell*, 91 Conn. App. 619, 635, 882 A.2d 98 (parties must analyze relationship between facts of case and applicable law), cert. denied, 276 Conn. 925, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 924, 888 A.2d 92 (2005). We, therefore, decline to review the defendant's inadequately briefed claim.

C

As a final matter, the defendant claims that the court improperly modified the property distribution orders by appointing a committee to sell the marital residence after finding the defendant in contempt. We disagree.

The following additional facts are relevant to that claim. In its memorandum of decision dissolving the parties' marriage, the court entered various orders regarding the marital residence, including one obligating the defendant to pay the plaintiff's mortgage by March 1, 2023. The court further ordered that, if the defendant failed to pay the plaintiff's mortgage by that date, the

---

[8]The defendant's appellate brief states: "The plaintiff failed to exercise her explicit remedy under the memorandum of decision, which allowed her to initiate a sale of the property if [the plaintiff's mortgage] was not paid by March 1, 2023. Connecticut law holds that a party cannot be held in contempt when their alleged failure to act stems from the other party's failure to exercise a self-executing remedy."

marital residence would be sold pursuant to "an aggressive marketing plan, designed to achieve a sale as quickly as possible . . . ." The court then outlined the mechanism by which such a sale would occur.[9]

Although that mechanism permitted the plaintiff to select a real estate agent to set an asking price and list the marital residence for sale if the defendant did not pay the plaintiff's mortgage by March 1, 2023, the record unequivocally indicates that the property already was listed for sale at that time. At the contempt hearing, the defendant testified that he placed the marital residence on the market for sale in early 2023. The marital residence remained on the market until August 29, 2023.[10]

[9]The court ordered as follows: "If [the plaintiff's mortgage] is not paid on or before March 1, 2023, [the marital residence] is to be sold pursuant to the sale provisions outlined below, said sale shall be based on an aggressive marketing plan, designed to achieve a sale as quickly as possible;

"a. The plaintiff shall pick the real estate agent to handle the marketing of the property;

"b. The selected agent shall set the asking price and the parties are to accept any legitimate offer within five percent of the asking price;

"c. Said price shall be reduced by ten percent every sixty days, so long as the listed price is not so low as to require a 'short sale';

"d. If there is a sale, the parties shall be equally responsible for the payoff of the mortgage, the real estate commissions, the conveyance taxes and recording fees; The defendant shall be solely liable for the real estate taxes, utility bills and cost of any repairs or deferred maintenance required to have the real property ready for sale;

"e. Any net proceeds from said sale after the plaintiff is paid her share and any interest that may have accumulated, all remaining proceeds shall belong solely to the defendant;

"f. The court shall retain jurisdiction over the real property until this order has been carried out in full . . . ."

[10]A copy of the listing agreement between the defendant and Berkshire Hathaway Home Services New England Properties was admitted into evidence at the contempt hearing as a full exhibit. That document specifies a listing date of February 2, 2023. It also contains an "amendment listing agreement" signed by the defendant and dated August 29, 2023, which states in relevant part that "[t]he above referenced Listing or Right to Sell Agreement is amended in the following ways . . . [l]isting cancellation, and withdraw from the [multiple listing service]." In addition, that exhibit contains a "listing change form" dated August 29, 2023, that is signed by the defendant and the managing broker, which specifies that the defendant had withdrawn and cancelled the listing.

Accordingly, the property was actively listed for sale in March, 2023, when the plaintiff's right to select an agent and place the property on the market arose pursuant to the court's dissolution orders. See footnote 9 of this opinion.

In light of the foregoing, the plaintiff filed a motion for contempt on March 1, 2023, in which she alleged that the defendant had failed to pay the plaintiff's mortgage and requested, inter alia, an order "compelling immediate compliance with the court orders" regarding the sale of the marital residence. At the subsequent hearing on that motion, the plaintiff testified that she had selected a real estate broker to handle the sale of the property in anticipation of a favorable ruling from the court. Later in her testimony, the court specifically asked the plaintiff what relief she wanted if the court was to find the defendant in contempt. The plaintiff responded that she wanted to recover "whatever is owed to me, per [the court's dissolution] order." The court then asked the plaintiff whether she preferred to have a real estate agent list the property for sale or have the court order its sale, to which the plaintiff clarified that she just wanted the property sold so that she could recover her share of the proceeds in accordance with the property distribution orders.

The court subsequently granted the plaintiff's motion for contempt, finding that the defendant wilfully violated the dissolution order by not paying the plaintiff's mortgage by March 1, 2023. The court then ordered in relevant part: "In light of the defendant's refusal to comply with the orders regarding the sale of the [marital residence], it is hereby ordered that the property . . . be sold by committee. . . . Fees and expenses of the committee shall be paid from the net proceeds of the sale after satisfaction of the plaintiff's mortgage . . . plus 10 percent interest per annum . . . ."

On appeal, the defendant claims that the foregoing order constitutes an improper modification of the court's property distribution orders. We do not agree. In the

February 11, 2020 judgment of dissolution, the court specifically stated in its orders regarding the marital residence that "[t]he court shall retain jurisdiction over [that] property until this order has been carried out in full . . . ." At the contempt hearing, the court was presented with uncontroverted testimony and documentary evidence indicating that the marital residence was actively listed for sale on the terminal date of March 1, 2023. The court at that hearing also received clarification from the plaintiff that her sole aim in pursuing this motion for contempt was to recover the sums due under the property distribution orders, which plainly entitled her to $183,000 along with interest accrued after March 1, 2023. In securing that relief for the plaintiff, the court ordered the sale of the marital residence by committee.

In light of the particular circumstances of the present case, we cannot conclude that the court's decision to do so was improper. "A court . . . does not have the authority to modify the division of property once the dissolution becomes final. . . . Although the court does not have the authority to *modify* a property assignment, a court . . . does have the authority to issue postjudgment orders *effectuating* its judgment." (Emphasis in original; internal quotation marks omitted.) *Schneider* v. *Schneider*, 161 Conn. App. 1, 6, 127 A.3d 298 (2015). The property assignment here awarded the defendant the marital residence, subject to an obligation to pay the plaintiff a specific sum secured by a mortgage and promissory note. In the event that the defendant failed to make that payment, the judgment of dissolution contemplated a prompt sale of the marital residence to ensure that the plaintiff recovered that sum. In our view, the court's decision to order a committee sale of the property following the contempt hearing was simply an attempt to effectuate those dissolution orders.

As this court has observed, the trial court "has authority to order additional measures not contained in the original order if they are necessary to effectuate the original judgment." (Internal quotation marks omitted.)

*Behrns* v. *Behrns*, 124 Conn. App. 794, 822, 6 A.3d 184 (2010); see also *Roberts* v. *Roberts*, 32 Conn. App. 465, 471–72, 629 A.2d 1160 (1993) (order to auction property effectuated original judgment despite fact that dissolution judgment did not call for sale by auction). We therefore conclude that the court's order of relief in the present case was a proper exercise of its remedial contempt authority to effectuate the terms of the judgment of dissolution.

The judgment is affirmed.

In this opinion the other judges concurred.